BALTIMORE & OHIO RAILROAD COMPANY vs. ELIZABETH BREI-
NIG, BY HER NEXT FRIEND, HENRY BITTER.

RAILROAD COMPANIES,—THEIR DUTIES AND LIABILITIES: NEGLIGENCE.
The obligation of a railroad company for the safe transportation of a
passenger, is one arising from contract imposing duties growing out of
the relation between the parties, involving trust and confidence, and
requiring the exercise of the utmost diligence and care; while towards a
stranger, no such relation exists, each party being in the lawful pursuit
of his own business, or the lawful exercise of his own rights, is not bound
by the same rigorous rule, but is required to exercise such reasonable
care to avoid injuring the other, as ordinary prudence suggests.

The amount or degree of care which the above rule requires must vary
according to circumstances, and should be commensurate with the risk
or danger of inflicting injury upon others.

——: ——: NEGLIGENCE OF PERSON INJURED.—Where one, not a passen-
ger, but a stranger to a railroad company, injured while crossing its
track through the thoroughfares of a city, might have escaped such in-
jury by the exercise of diligence such as was reasonably to be expected
from the age and intelligence of such person, the company will not be
liable in damages for such injury although it may be chargeable with
negligence.

——: ——: MEASURE OF DAMAGES.—Where there is no evidence of wan-
ton and malicious, or gross and outrageous conduct on the part of the
company or its agents, actual damage is all the plaintiff can recover for.

APPEAL from the Superior Court of Baltimore city:

This was an action instituted by the appellee against the
appellant on the 30th of December, 1863, to recover damages
for injuries received while attempting to cross the road of
the appellant laid in the streets of Baltimore city. The
plaintiff declared that the defendant, a corporation, owning
a railroad and accustomed to run railway cars along the track
of said road in the city of Baltimore, did, on the 9th day of
June, 1859, negligently and carelessly cause said cars to run
upon and against the plaintiff, whereby she was greatly in-
jured, permanently maimed and crippled, and her life imper-

iled. The defendant pleaded that it did not commit the wrong charged, and is not guilty in the premises; and issue was joined.

*Exception.*—At the trial it appeared, that on the 9th day of June, 1859, the plaintiff, who was six years old, was living with her father and attending school, and had been attending school for eighteen months; and that her route to and from school required her to cross the track of the Baltimore and Ohio Rail Road at one of the streets just below the Camden station. It also appeared, that on that evening, the plaintiff, with two or three of her companions, returning from school, approached the railroad at the point where it crosses Henrietta street—one or two squares out from the Camden station—where there are three parallel tracks, or two tracks and a "siding;" that the children approached the tracks as two trains were moving upon parallel tracks, in opposite directions, propelled by steam; the one going out led by a heavy engine at a considerable rate of speed, the other consisting of nine cars backing in slowly, pushed by a heavy engine. It also appeared, that the children avoided the outward bound train, but were run against by the backing train and knocked down, the child, whose hand was clasped in that of the plaintiff, killed, and the plaintiff knocked down, run over, her foot, the calf of her leg and hip seriously and permanently injured, and also injuries of a private nature sustained.

It further appeared, that the train which did the injury was backing at the time, and had no guard or lookout at the rear, and was under the care and management of two men only—a brakesman who was acting as conductor, and an engineer who was acting also as fireman; that at the time of the injury, the engineer was on the engine, the brakesman on the ground, either beside the engine or between the cars, for the purpose of uncoupling them, and neither of them

saw the accident, or knew of it until their attention, was called to it by others, when they found the children crushed and under the second car from the rear.

Upon this evidence the defendant offered the three following prayers:

1. If the jury shall believe that the plaintiff was injured by being struck by. a train of cars in charge of the agent or agents of the defendant, said agents being men of good character, familiar with their respective duties and competent to discharge them; that it was the duty of one of them to see that the track in front of the train in the direction in which it was moving was clear from obstruction, and if not, to give notice to the engine man to stop the train; that the party intrusted with this duty placed himself in the best position for this purpose, at a point where he could see both in front of the backing train and see the engine man, and that he had seen that the track was clear in front of the rear of the backing train, and that he saw that the plaintiff was standing in safety, where, had she remained, she would have escaped injury, and that he had no reason to believe the plaintiff would leave her position, nor was there anything in the conduct of the defendant to cause her to do so, then the plaintiff is not entitled to recover, even though the jury should believe that the plaintiff did, in fact, run immediately in front of, or attempt to pass through, the train when she was struck and injured.

2. If the jury shall believe that the plaintiff would have escaped the injury complained of by the exercise of diligence on her part, such as was reasonably to be expected from her age and intelligence at the time, then she is not entitled to recover, even though the jury should find negligence on the part of the defendant or its agents.

3. That there is no evidence in the case (should the jury find for the plaintiff) of such wanton and malicious or gross and outrageous conduct on the part of the defendant or its

agents as would warrant punitive damages, and that actual damage is all the plaintiff can recover.

The Court (MARTIN, J.,) granted the defendant's second and third prayers, rejected the first, and gave the following instructions:

If the jury find from the evidence that the defendant was, at the time of the happening of the accident, of which the plaintiff complains, the owner of a railroad track or tracks running through or cross the thoroughfares and streets of the city of Baltimore, as described by the witnesses, and along which, for its own purposes, cars were drawn or propelled by steam engines, then in the use and management of said cars and engines, the defendant was bound to exercise the utmost care and diligence which it had the means and power to employ, having regard to the business in which it was engaged.

And if the jury find that the plaintiff, Elizabeth Breinig, was injured by the defendant's cars, and that if the defendant, in the use and management of its cars and engines, had exercised such care and diligence the accident would have been prevented, then the plaintiff is entitled to recover; unless the jury find that the accident could have been avoided by the exercise of that degree of care by the plaintiff which was, under the circumstances of the case, to be naturally and reasonably expected in one of the plaintiff's age and intelligence.

The defendant excepted to the first instruction given by the Court, and to the rejection of its first prayer, and the verdict and judgment being in favor of the plaintiff, appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, and WEISEL, J.

*John H. B. Latrobe* and *Ferdinand C. Latrobe*, for the appellant, argued:

1st. That in the management by a railroad company of its engines and cars, while engaged in conducting its usual business, with reference to persons having no connection or privity with the said road, and who may simply be passing in the neighborhood of its tracks, the law requires only such ordinary care and diligence as common prudence would require them to exercise in the management of its said business.

2nd. It is what may be called a principle of the Common Law, that a plaintiff cannot recover for injuries to which his own negligence directly contributed.

3rd. That the rules relating to the rights and duties of persons natural and artificial to each other must be uniform; that they cannot vary according to the years or degree of intellect of natural persons without producing an uncertainty in the law destructive of all principles; that all persons incapable of diligence should, and usually have, guardians to care for them; upon them the duty of care and diligence is devolved, and their negligence must, in law, be regarded as the negligence of the incapable infant or lunatic, when they have been injured in cases arising between them and third persons acting without notice.

4th. That punitive, or vindictive, or exemplary damages can only be awarded by a jury to a plaintiff where elements of fraud, malice, gross negligence or oppression mingle in the controversy.

In support of the above propositions, they refer to *State, use of Coughlan, vs. Balto. & O. R. R. Co.,* 24 *Md. Rep.,* 84. *Bannon vs. Balto. & O. R. R. Co.,* 24 *Md. Rep.,* 108. *Brand vs. R. R. Co.,* 8 *Barb.* 369.

*Henry Stockbridge,* for the appellee:

The appellee contends that the appellant, in inflicting upon her the injury which she sustained, was guilty of such

gross and outrageous negligence and carelessness that the Court should have permitted the jury to give exemplary damages. Gross negligence, tending to the injury of limb or destruction of life, is visited with punitive damages equally with actual malice. *Sedgwick on Damages*, 38. *Hay vs. Cohoes Co.*, 3 *Barb. S. C. R.*, 42. *Whipple vs. Walpole*, 10 *N. H. R.*, 130. *Linsley vs. Bushnell*, 15 *Conn.*, 225. *Huntley vs. Bacon*, 15 *Conn.*, 267. *Hopkins vs. Atlantic & St. L. R. R. Co.*, 36 *N. H.*, 17. *Kelsey vs. Barney*, 2 *Kernan*, 429.

It is difficult, if not impossible, to conceive of negligence more gross than that of the appellant at the time of this occurrence. There was an utter disregard of the measures of caution prescribed by the ordinances of the city. *City Ordinances*, 1853, *No.* 88. *Revised Ordinances of* 1858, *No.* 67, 225. The appellee contends that negligence so gross is at law a grave crime.

II. The appellee further contends, that the degree of care and diligence which the Court, in its instructions, required the appellant to exercise, was not greater than is demanded by the rules of law, by sound reason and public policy.

1. The degree of care to prevent injury to persons or property which the law requires in any case, varies with the degree of danger which springs from carelessness or neglect; the greater the peril to be apprehended, the greater the care required. The object to be gained, the end of this requisition of care is the public safety. *Kelsey vs. Barney*, 2 *Kernan*, 429. *McGrath vs. H. R. R. R. Co.*, 32 *Barb. S. C. R.*, 152. *Johnson vs. Hudson River R. R. Co.*, 6 *Duer*, 633. *Gorman vs. Pacific R. R. Co.*, 26 *Missouri*, ( 5 *Jones*,) 447.

The apparent conflict between different decisions, as to the degree of care required, will be found to spring from an inaccurate use of the terms employed. Different Courts have manifestly expressed the same idea in different language;

and the doctrines, in fact, harmonize when the circumstances which invest the several cases are properly understood.

"Ordinary" is always a comparative term, never an absolute. What would be "ordinary care" under one class of circumstances, would be "special care," "a very high degree of caution," "extreme care," "great diligence," "utmost care," the "most extraordinary care" under other circumstances.

2. Persons employing the powerful, but dangerous, agency of steam are bound to use the greatest possible care and diligence to prevent injury to individuals. This was the doctrine of the United States Supreme Court in the well considered and leading case of the *Phila. & R. R. R. Co. vs. Derby,* 14 *Howard,* 486, which was affirmed by the same Court in *Steamboat New World vs. King,* 16 *How.,* 474, and has been the controlling authority in the Courts of the whole country for the last twelve years. *Johnson vs. R. R. R. Co.,* 6 *Duer,* 633. *Bernhardt vs. R. & S. R. R. Co.,* 32 *Barb. S. C. Reps.,* 167. *McGrath vs. H. R. R. R. Co.,* 32 *Barb. S. C. Reps.,* 156. 20 *N. Y. Rep.,* (6 *Smith,*) 67, 75. 22 *Id.,* 212.

All the cases base their decision on the ground of public safety; none on the ground of a contract between the carrier and the passenger. In the last case, the learned Judge after quoting 16 *How.,* expressly applies the doctrine of *New World vs. King,* to persons passing along the streets, on the ground that "human life is just as sacred outside the cars as inside; entitled to the same care when lawfully crossing a public road" as when riding in a car.

3. In localities where greater danger is to be apprehended greater caution is required, and a moving power in any thronged thoroughfare must exercise extreme caution. This proposition rests upon the same principle as the former one—the public safety. The Courts apply it alike to powers moving on land or water. *Genessee Chief vs. Fitzhugh,* 12

*How.*, 463. *Culberston vs. Shaw*, 18 *How.*, 587. *Wilds vs. H. R. R. R. Co.*, 33 *Barb. S. C. Reps.*, 509. *Wilson vs. Cunningham*, 3 *Cal. R.*, 241. *Daley vs. N. & W. R. R. R. Co.*, 26 *Conn. R.*, 595.

The instructions in this case do not permit the plaintiff to recover, unless the jury find all of these elements combined, viz : " the use of the powerful, but dangerous, agency of steam," the employment of " machines eminently destructive of life and limb," " engines having vast power of mischief," and that along " or across the thoroughfares and streets " of a great city, and negligence or carelessness in such use. The instructions do not require of the defendant impossibilities, or the discontinuance of its business ; they require a care and diligence within its means and power while still prosecuting its business. At least this degree of care is demanded by public safety. That it would exercise at least this degree of care was one of the obligations which it assumed when it sought and obtained the high privileges conferred by its charter ; and when it sought and obtained the privilege of traversing with its fearful machinery the streets and thoroughfares of the city of Baltimore.

BARTOL, J., delivered the opinion of this Court.

Few cases have caused greater embarrassment to the Courts than those involving questions of negligence on the part of railroad companies, and their agents, in the management and conduct of their engines and trains. This grows, in a great measure, out of the nature of the question itself. Being generally a mixed question of law and fact, it is not very easy, at all times, to define the limit that separates the jurisdiction of the Court from that of the jury.

While in the jurisprudence, both of England and this country, the general rule is established that the question of negligence is one for the jury to decide ; yet, as negligence consists in the failure or omission to perform some duty

which the law imposes, it is within the province of the Court to declare what that duty requires, or to lay down the rules of law applicable to the particular case, so that the jury may have some certain guide in forming their verdict. In the discharge of this duty the Courts have often attempted, by some general definition, to fix the standard or degree of diligence imposed by the law in particular cases; this, from the nature of the subject, and from the varied and complicated character of cases, as well as from the ambiguity and imper-. fection of our language, it is not possible to accomplish; and the attempt to prescribe such a standard has often produced difficulty and confusion instead of tending to establish plain and intelligible rules so as to aid the jury in their investigations, and restrain them within just and proper limits.

It is a very obvious principle of law, as well as of justice and common sense, that every one, in the prosecution of his business, is bound to exercise that degree of skill, prudence and care, to avoid inflicting injury upon others, proportioned to the danger. When applied to railroad companies employing machinery propelled by the dangerous and powerful agency of steam, moving bodies of immense weight and bulk, often with great velocity, necessarily exposing to danger the lives and limbs, not only of passengers in the train, but of others whose occupations require them to go upon or to cross the railway, this principle imposes on the company the legal obligation to observe a higher degree of skill and care than would be exacted in the management of the ancient, more simple and less dangerous modes of conveyance. And this again must be varied by other circumstances, such as the place where the train is moved, and the degree of risk and danger of injury to others.

This Court has had before it recently several cases in which it was necessary to express our judgment upon the degree or measure of diligence required by the law in such cases.

In the case of the *Baltimore & Ohio Rail Road Co. vs.*

*Worthington,* 21 *Md. Rep.,* 275, where a passenger sued to recover damages resulting from an accident to the train in which he was riding, it was held, that in order to exempt the defendant from liability it was bound *"to exercise the utmost care and diligence which human prudence and foresight could employ."* Or in other words, the legal duty growing out of the undertaking of the defendant, as a carrier of passengers, imposed on it the highest degree of diligence and care, and for a failure or omission to perform this duty, in any particular, the defendant was responsible.

At the last term, the cases of *The State, use of Coughlan,* and *Patrick Bannon, by his next friend, vs. The Balto. & Ohio R. R. Co.,* came before us for decision; those were cases like this, where injury had been inflicted by a railroad train, not upon passengers in the cars, but persons in no way connected with the railroad company, while passing over or upon the railway, and a distinction was drawn between cases of that kind and the case of a passenger upon the train, growing out of the difference in the obligation and duty of the railroad company in the two cases.

The reasoning of Judge Willard, who delivered the opinion of the Supreme Court of New York, in *Brand vs. The Troy and Schenectady R. R. Co.,* 8 *Barbour,* 376, was quoted with approbation as shewing the true grounds upon which this distinction rests, and as correctly defining the nature and extent of the duty imposed by law upon the defendant in a case like the present. In the argument of this cause we have been asked to review and modify the decisions pronounced at the last term. But upon more mature reflection, aided by the argument of this case, and the authorities cited, we are of opinion that the distinction taken in 8 *Barbour,* and heretofore sanctioned by this Court, is just and reasonable, and based upon sound principles, notwithstanding it seems to have been questioned in one of the later cases in New

York.  See *Johnson vs. The Hudson R. R. Co.*, (in the Superior Court,) 6 *Duer*, 641, 642.

The obligation of a railroad company for the safe transportation of a passenger, is one arising from contract imposing duties growing out of the relation between the parties, involving trust and confidence, and requiring the exercise of the utmost diligence and care, while towards a stranger no such relation exists, each party being in the lawful pursuit of his own business, or the lawful exercise of his own rights, is not bound by the same rigorous rule, but is required to exercise such reasonable care to avoid injuring the other as ordinary prudence would suggest; of course the amount or degree of care which this rule requires must vary according to circumstances, and should be commensurate with the risk or danger of inflicting injury upon others.

Or, as very happily defined by Judge Sutherland, (24 *N. Y.*, 187,) "that care and attention which experience has found reasonable and necessary to prevent injury to others in like cases."

In this case the instruction given to the jury, by the Court below, is almost identical with that in the cases of Coughlan and Bannon, to which we have referred, requiring the defendant "to exercise the utmost care and diligence which they had the means and power to employ, having regard to the business in which they were engaged." This rule, as we have heretofore decided, is too rigorous, and imposed upon the railroad company more than is required in such cases, and for that reason the judgment must be reversed and the case sent back for a new trial.

We think there was no error in the other rulings of the Superior Court. The propositions contained in the second and third prayers of the defendant have already received the sanction of this Court in the case of *Bannon vs. The Balto. & O. R. R. Co.*, before referred to, and properly an-

nounced the law in this case, both as to the question of diligence on the part of the plaintiff and the true measure of damages. The first prayer of the defendant was, in our opinion, properly rejected, because it altogether ignores or omits to notice some material facts which were proper for the consideration of the jury in passing upon the question of negligence, such as the observance, by the defendant's agents, of the precautionary measures prescribed by the city ordinances; and also the having such a complement of men in the management of the train as reasonable care and prudence might, in the opinion of the jury, have required under the circumstances.

> *Judgment reversed, and*
> *procedendo ordered.*

(Decided July 11th 1866.)