GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
M. J. SMITH ET AL.

No. 200.

1. **Great Care and Prudence.**

Great care and prudence is a higher degree of diligence than ordinary care... 352

2. **Duty of Railway Employes at Crossings.**

The duty of railway employes at public crossings, or at places on the track commonly used by the public with consent of the railway company, is ordinary care to avoid inflicting injury to persons upon the track; such care as a person of ordinary prudence would use under like circumstances ..... 352

3. **Same—Same—Charge.**

It was reversible error to charge the jury that great care and prudence was required on part of employes at a crossing... ........................... 352

**4. Railway Crossings—Care Required.**

The same rule does not apply to passengers and to persons lawfully crossing or going upon a railway track. One approaching a crossing or walking lawfully upon a track is a stranger to the railway company in a contractual sense, exercising a right equal to that of the railroad to use the track at that point; he is in no sense in the care of the railway, but is charged with the duty of caring for his own safety. The rights and duties of the railway company and such person are mutual, it being the duty of each to exercise ordinary care .... ........................................... 352

**5. Ordinary Care, What?**

Ordinary care will require the exercise of a very great degree of vigilance under some circumstances; and the amount of vigilance and caution to be used will vary according to the situation of the parties or the circumstances. But the standard by which the acts are to be judged remains the same. The amount of vigilance to be exercised must be proportioned to the necessities and exigencies of the occasion.................................: 353

**6. Care Limited.**

Railway v. Matula, 79 Texas, 582, discussed and limited as to degree of care required of railroads at crossings to prevent injuries to persons upon public highways or places at which persons commonly cross its track with knowledge of the railway company ....    ...  ..........................  ..... 357

**7. Assignments, How Considered in Error.**

This court will consider the questions of law properly arising under assignments without regard to the assigned reasons. Railway v. King, 80 Texas, 683 ............  ...................................................... 357

**8. Flying Switch—Due Care.**

There is no statute nor positive rule of law which forbids the making of *flying* or *running* switches, and it can not be declared by the court to be negligence, nor can the question of negligence depend upon what other railway companies may forbid or permit. Whether its use constitutes negligence is matter of fact for the jury under the circumstances of the case ......... 358

**9. Care of Railway Company Same as by a Man.**

The law prescribes that the degree of care to be exercised by the railway company shall be such as a man (or person) of ordinary prudence and caution would use under the same circumstances. The man is a human being possessed of both intellect and conscience, and is expected not only to exercise his judgment; but his humanity will dictate the doing of anything that is reasonably necessary to avoid taking life or inflicting injury upon a human being ...................................................... ...... 359

ERROR to Court of Civil Appeals for Second District, in an appeal from District Court of Cooke County.

*J. W. Terry,* for plaintiff in error.—The defendant was only bound to the use of ordinary care, and the court erred in charging that it should have exercised great care. Railway v. Hodges, 76 Texas, 90, and cases cited.

On contributory negligence: Railway v. Dean, 76 Texas, 73; Railway v. Bracken, 59 Texas, 71; Hoover v. Railway, 61 Texas, 503; Rail-

way v. Richards, 59 Texas, 373; Railway v. Ryon, 70 Texas, 56; Railway v. York, 74 Texas, 367; Railway v. Garcia, 75 Texas, 590.

Managers of car were justified in assuming that Smith would leave track in time to avoid injury: Railway v. Smith, 52 Texas, 185; Artusy v. Railway, 73 Texas, 191; Railway v. Garcia, 75 Texas, 591; Railway v. Kuehn, 70 Texas, 582.

The evidence was insufficient to establish license for use of defendant's track: Railway v. Brown, 18 S. W. Rep., 670.

That Smith's negligence in stepping on track was the proximate, and the negligence charged against defendant the remote, cause of his death: Railway v. Chambers, 73 Texas, 296; Railway v. Dean, 76 Texas, 73.

That the doctrine of comparative negligence does not exist in Texas: Railway v. Thornsberry, 17 S. W. Rep., 524.

That Smith was a fellow servant with the trainmen: McKin. on Fel. Serv., sec. 141; Ewald v. Railway (Wis.), 33 Am. and Eng. Railway Cases, 326, and cases there cited; Moran v. Railway, 67 Barb., 96; Railway v. Gause, 76 Ind., 142; The Commonwealth v. Railway, 143 Mass., 501.

Counsel also cited the following authorities: Mims v. Mitchell, 1 Texas, 443–446; Lemmon v. Hanley, 28 Texas, 219–227; Dennison v. League, 16 Texas, 399; Parker v. Beavers, 19 Texas, 406; Express Co. v. Darnell, 62 Texas, 639; 2 Myers' Dig., 919, 920; Hall v. Jackson, 3 Texas, 305; Paul v. Perez, 7 Texas, 338–445; McKinney v. Frost, 10 Texas, 234; Price v. Railway (Mo.), 3 Am. and Eng. Railway Cases, 365; Batterson v. Railway (Mich.), 8 Id., 123; Waldhier v. Railway, 71 Mo., 514; Railway vs. Narcott, 41 Mich., 433; Allerton v. Railway, 34 Am. and Eng. Railway Cases, 563; Buffington v. Railway, 64 Mo., 246; Railway v. De Camp, 11 Brad. (Ill.), 475; Railway v. Stark, 38 Mich., 714.

*R. V. Bell* and *Stewart & Lewis*, for defendants in error.—The charge objected to is correct, and has in literal terms been approved. Railway v. Matula, 79 Texas, 582.

BROWN, ASSOCIATE JUSTICE.—M. J. Smith, the wife, and Julia T. Smith, the child, of Charles Smith, deceased, sued the defendant, the Gulf, Colorado & Santa Fe Railway Company, to recover damages for the death of the said Charles Smith, alleged to have been caused by defendant's negligence. From the conclusions of fact found by the Court of Civil Appeals we make the following statement as to the manner in which Smith lost his life:

Charles Smith was walking upon the track of the defendant in the city of Gainesville, when, hearing an engine coming behind him, he stepped off the track until the engine and cars attached passed him, when he

stepped back on the track. A car had been detached from and was following the train which ran over Smith, and inflicted wounds upon him from the effects of which he died in a very short time. When deceased was struck by the car he was either on the track at the crossing on Belcher street, in the city of Gainesville, or on the track near to the street, at a point where the railroad track was commonly used by the public as a passway for people on foot, with the knowledge and consent of defendant. Belcher street was a public street of that city.

The employes of defendant who were in charge of the train were making a "flying" or "running" switch for the purpose of setting the caboose, the rear car, in on a side track south of the crossing on said street. In making the switch the train was started at a high rate of speed, about 300 feet north of the crossing, and the rear car was detached about seventy feet north of the street; when the detached car reached the point where it struck Smith it was running at a rate of speed greater than six miles per hour. An ordinance of the city, then in force, prohibited the running of cars and engines in the city at a rate of speed exceeding six miles per hour. There was a rule of the defendant company prohibiting the making of "flying" or "running" switches inside of the city limits. The brake on the detached car was defective, so that it would not stop the car in a reasonable distance. The brakeman on the detached car saw Smith and understood his danger in time to have stopped the car before it struck him, if the brake had been in good condition, but he failed to do so. The testimony is conflicting as to the speed of the train, and the fact that the employe saw the deceased in time to have stopped the car before it struck him. But we make the statement in accordance with the facts found by the Court of Civil Appeals.

The case was tried before a jury and verdict rendered for the plaintiffs, upon which judgment was entered, which upon appeal was affirmed by the Court of Civil Appeals.

Plaintiff in error presents in its application for writ of error four-teen objections to the judgment of the Court of Civil Appeals, but we think that none of them are well taken except three, which we will examine.

The thirteenth assignment of error as presented to the Court of Civil Appeals questioned the correctness of the first section of the charge given by the court, and the eighteenth assignment presents for consideration the sixth section of the charge, which we will consider together. The eighth charge we consider as having an important bearing upon the two in question and we here insert them, as follows:

You are instructed as to the law of this case as follows, viz:

"1. You are instructed, that the law requires those in charge of railway engines and trains to use great care and prudence in operating them at streets and public crossings, to discover persons who may be

upon same, and to avoid damage to their persons and property, and if by the want of such care and prudence injury is inflicted upon others without the fault of such others, the company will be liable for such injury. And if you find from the evidence that Charles Smith, at the time of his injury, was upon the track of the defendant company on Belcher street, in the city of Gainesville, and that the defendant's agents and servants in charge of its car, by the exercise of the degree of care above stated, would have discovered said Smith upon said track in time to have avoided injuring him, and that by reason of the failure to use such care they failed to discover said Smith, and because of such failure said car was permitted to run upon and kill said Smith, without fault or negligence upon his part, and that but for such failure, if any, upon the part of defendant's agents and servants, such injury would not have happened, then you will find for plaintiffs.

"6. If you find from the evidence that the place where the said Smith was struck by defendant's car was on the defendant's track at a place not a public street or crossing, but at a place which was commonly used by the public as a passway, and such uses were had with the knowledge of the company and without objection on its part, and if such uses were known to the agents and servants of defendant managing and operating said car, and if said agents and servants, by the exercise of the care required in section 1 of these instructions, could have discovered said Smith upon said track in time to have avoided injuring him, and that by reason of the failure to use such care they failed to discover said Smith, and because of such failure said car was permitted to run upon and kill said Smith, without fault or negligence upon his part, and that but for such failure, if any, upon the part of defendant's agents and servants, such injury would not have happened, then you will find for plaintiffs.

"8. The law requires every person to use ordinary care for his own safety and preservation, and if you should find that said Charles Smith did not use ordinary care to protect himself from injury, and that he would not have been killed had he used ordinary care, then the plaintiffs are not entitled to recover, notwithstanding you may find that the defendant was guilty of either or all of the wrongs alleged against it. By ordinary care is meant such care as an ordinarily prudent and cautious person, similarly situated as said Smith was, would have exercised under the circumstances."

The first sentence of the first section of the court's charge to the jury prescribes "great care and prudence" as the degree of "care" required of the employes of the defendant at the public crossing of the street; and in the sixth charge the same rule is announced as that which must be observed at a place on the track which is commonly used by the public with the knowledge and consent of the railroad company. Webster defines "great" to be "more than ordinary in degree; very con-

siderable in degree; as to use great caution; to be in great pain."
Shearman & Redfield's Negligence, section 47, divides care into three
degrees: first, slight care; second, ordinary care; and third, great care;
which last is defined to be "that degree of care usually bestowed up-
on the matter in hand by the most competent, conscientious, prudent,
and careful class of persons engaged in the business to which such
matters belong, no matter how few such persons may be, if they are
numerous enough to have a recognized existence as a class."    Great
care, therefore, is a degree of care greater than that usually bestowed
by persons of ordinary prudence under like circumstances.    It is evi-
dent that the court intended to make this distinction in the charge
given, and the jury must have so understood it, since in the eighth
section of the charge the court instructs the jury that the deceased
was bound to use *ordinary* care, and proceeds to define ordinary care
to be that degree of care which "a person of ordinary prudence would
use under like circumstances."

In the section cited above from Shearman & Redfield on Negligence,
the author says: "In every case it must be understood as an essential
part of the definition that the test applied is the kind of care usually
exercised by persons of that class refered to under circumstances simi-
lar to those of the case under consideration."    The object in instruct-
ing the jury as to the degree of care, is to furnish them with a stand-
ard by which to judge of the acts or the party whose conduct is in
question.    In this case, the standard set up by the court with which
the acts of defendant's agents and employes were to be compared was
"the most competent and conscientious, prudent and careful class of
persons engaged in the business, no matter how few in number, if they
constitute a class."    This imposed the highest degree of care known
to the law, which is that degree of care prescribed by law for the gov-
ernment of railroad companies towards their passengers.    Shearm. &
Redf. on Neg., sec. 51; Railway v. Gorbett, 49 Texas, 573.

The same rule does not apply to passengers and persons lawfully
crossing or going upon a railroad track.    The passenger under a con-
tract has committed himself to the safe-keeping of the carrier, having
no part in the management of the means of conveyance, while one ap-
proaching a crossing or walking lawfully upon a track is a stranger to
the railroad company in a contractual sense, exercising a right, equal
to that of the railroad, to use the track at that point; he is in no sense
in the care of the railroad company, but is charged with the duty of
caring for his own safety.    The rights and duties of the railroad com-
pany and such person are mutual, it being the duty of each to exercise
that degree of care that a man of ordinary prudence would use under
the same circumstances.    4 Am. and Eng. Encyc. of Law, p. 910, sec.
7; Patterson Ry. Acc. Law, secs. 157, 158; Imp. Co. v. Stead, 95 U. S.,
161; Railway v. Terry, 8 Ohio St., 570; Weber v. Railway, 58 N. Y.,

462; Railway v. State, 29 Md., 261; Railway v. Hudelson, 13 Ind., 329; Railway v. Moore, 59 Texas, 67; Railway v. Hodges, 76 Texas, 90; Cotton Press Co. v. Bradley, 52 Texas, 599.

Ordinary care will require the exercise of a very great degree of vigilance under some circumstances, and the amount of vigilance and caution to be used will vary according to the situation of the parties and the surrounding circumstances. Weber v. Railway, supra; Railway v. Breinig, 25 Md., 388. But the standard by which the acts are to be judged does not change. It remains the same. To illustrate the meaning and application of the rule, let us suppose that a man driving a team of horses approaches a railroad crossing upon a public highway, and at the same time a train approaches upon the railroad track. The degree of care required of the man with the team and those operating the train is the same, but one is using a means of travel usually easily controlled, and he is to make use of such precautions as a man of ordinary prudence would use in driving a team of horses under the same circumstances, while the engineer on the railroad must observe those measures of precaution which a man of ordinary prudence would use under like circumstances if operating an engine. Each must act according to the apparent danger and the ability to control the instruments of travel under his control. For instance, the man with the horses might drive at a rapid gait to a point near to the track, because he can readily halt; but if the street or highway crossing were so situated as to be especially dangerous, or one at which there was a great deal of crossing, the engineer could not take the risk of controlling his machinery running at a high rate of speed, but must, in the exercise of ordinary care, bring his engine under such control as the situation and circumstances demand, consistent with the carrying on of the business. So too the amount of care to be used will vary with the same person under changed conditions. If an engineer should on his run come to a crossing in an open country, where he could see the track for a long way ahead, and objects for a great distance on each side of it, and seeing no one near, he might safely run at the usual rate of speed; continuing on his trip he may come to another crossing in a more populous country, where the crossing of persons is more frequent, and the approach to the crossing is through a cut and upon a curve, whereby he is not able to discover the presence of those who may be there rightfully. At the latter crossing he must not act as at the former, but is required to bring his locomotive under such control as will enable him to reasonably protect those that may be there lawfully, as well as to give the signals required by law. If the same engineer on the same trip should arrive at a point where, in a large city, a public highway is to be crossed at which it is common for the inhabitants to cross the railroad track in great numbers, he must adapt his measures of caution to these conditions. The same man *of ordinary prudence* operates the train at

each place, but acts differently at each; the standard is the same—that is, the conduct of a man "of ordinary prudence," while the diligence exercised may be ordinary or it may be great, according to the requirements of changed circumstances.

In some cases it has been said that the degree of care varies with the circumstances of each case, but by this is meant that the amount of vigilance to be exercised must be proportioned to the necessities and exigencies of the occasion. Examination of these cases will show, that it is not meant that a different standard of care should be applied to the use of the same instrumentalities with reference to persons occupying the same relations to each other; the confusion arises from the use of the word care to express its different meanings. It is right and proper for the court to charge what is the degree of care incumbent upon a party engaged in a given employment, but it would be error to charge as to the quantum of diligence that should be used by such person under a certain state of facts; that is ordinarily a question of fact for the jury to find, by determining what a person of the class given as the standard would do under such a state of case.

We are referred by the defendant in error to the case of Railway v. Matula, 79 Texas, 582, as being a case in point to sustain the charge under consideration. In that case this court, Chief Justice Stayton delivering the opinion, approved the following charge: "You are further instructed, that the law requires those in charge of railway engines and trains to use great care and prudence in operating them so as to avoid damage and injury to the property and persons of other people; and if by the want of use of such care and prudence injury is inflicted upon others without the fault of such others, such companies must pay for such injuries and damages."

It will be seen that the foregoing is substantially, almost literally, the same as the first sentence in the first section of the charge given in this case. Each opinion must be read and understood in the light of the facts of that case. The official report of the case cited does not show the facts sufficiently to give a clear comprehension of what the court intended to decide. We have examined the original record, and find that the facts were substantially as follows:

The crossing at which the injury occurred was upon defendant's' road, on a street in the town of Schulenburg, at which point there was considerable travel. The railroad company had torn up this crossing for repairs, and had left it without fixing any plank on either side, the rails being four or five inches above the track. There was a side track near the main track, upon which stood box cars which concealed from view, at the point from which plaintiff approached it, any train coming from the east, the direction from which the train which caused the injury came, and the track east of the crossing ran through a deep cut within a short distance of the crossing. Plaintiff and his wife were

riding along the road running parallel with the railroad, they going west, until they came to the point where the dirt road or street turned to cross the railroad. They stopped and looked both ways for a train, and listened also. Neither hearing nor seeing a train, they drove up to within six feet of the track, and stopped and listened and looked again for a train, and discovering no train they drove to the track to cross, when they for the first time saw the train approaching, the horses being upon the track. The wheels of the wagon struck the rail on the railroad, and the horses balked; plaintiff endeavored to back the horses, but failed, and then undertook to turn them off the track away from the direction the train was coming, when the engine struck the wagon and horses. The depot was located about 2000 feet east from this crossing, and when the train started from the depot the bell was rung, but no whistle was blown or bell rung between that and the crossing. The engineer saw the plaintiff and his wife driving along the road and observed that the woman was nervous, supposing that she was rendered so by the train's proximity; he saw the plaintiff's wagon on the track when he was forty yards from them, and could have checked the speed of the train, but thought he could not stop it, and he made no effort to stop or check its speed. The engine struck the team when the train was running at a high rate of speed, and one witness said that he heard sharp whistles, and looking up saw a "wreck in the air, consisting of a woman and man, horses and wagon." The woman was so badly injured that she died in a short time, and the man was seriously hurt. The horses were killed and the wagon demolished.

In addition to the charge quoted in the opinion referred to, the trial court in that case gave the following:

"2. But if you believe from the evidence that the injuries complained of by plaintiff were done or inflicted, and that plaintiff, by want of the use of that proper care and prudence that ordinarily cautious people exercise in the ordinary affairs of life, contributed to his loss and injuries, and that such would not have happened if he had used such ordinary care and prudence, then plaintiff can not recover in this suit, and you will find for the defendant.

"4. Therefore, if you find from the evidence before you that the injuries complained of were inflicted by the defendant, by the negligence and want of due and proper care on the part of the employes, as charged by plaintiff, then you will find for plaintiff, unless you also find that the defendant contributed to his injuries as before given you in charge."

The second and fourth charges quoted apply the same degree of care to the plaintiff and the defendant, which is in each expressed as due and proper care, which term is in the second defined to be the care of "ordinarily prudent and cautious people in the ordinary affairs of

life." This is not accurate in itself, but it shows that the court did not intend to prescribe a higher degree of care for the defendant than *ordinary* care. Considering the whole charge, the jury must have understood that the charge approved by this court in Railway v. Matula meant, that in the exercise of this degree of "due and proper care" the defendant, under the circumstances of that case, was required to exercise a great amount of vigilance. The court might well, under the evidence of the engineer to the effect that he saw the parties in peril and made no effort to stop or check the train, have charged, that the employes of defendant were required to use every means in their power to stop the train or check its speed; for it is not true that because a train, in the opinion of the engineer, can not be stopped absolutely, he is therefore not required to check its speed, if by so doing he might have lessened the chances of injury. Under such a state of facts this court would not reverse the judgment, although the charge was not critically correct, because under the undisputed evidence the engineer was guilty of negligence which caused the injury.

We believe that the court, in making the decision in Railway v. Matula, acted upon this view, and did not intend to approve that charge as expressing the *degree* of *care* required of railway companies at crossings.

That there may be no mistake hereafter as to the effect of Railway v. Matula, we announce the rule that railroad companies at crossings and such portions of its track as may be commonly used as footway or crossing, which is known to the company, and at which persons may be expected, must use ordinary care to discover their presence and to avoid inflicting injury upon them (Railway v. Crosnoe, 72 Texas, 79), and that in the exercise of that degree of care they must use such an amount of vigilance and caution as a man of ordinary prudence would use under like circumstances. If the case of Railway v. Matula is to be understood as in conflict with this rule, then in so far as it conflicts therewith it is hereby overruled.

The seventeenth assignment of error questions the correctness of the fifth section of the charge given by the court. The reasons set up in the assignment are not altogether sound, but this court will consider the questions of law properly arising under the assignment, disregarding the assigned reasons, if wrong. Railway v. King, 80 Texas, 683.

The fifth section of the charge is in these words:

"5. If you find from the evidence that at the time of the accident the defendant's agents and servants in charge of the defendant's engine and cars were endeavoring to make what is known as a 'running' or a 'flying' switch, and that the endeavor to make such switch is unsafe and dangerous, and such as is not permitted by the railway companies exercising care and prudence in the conduct and management of their trains, and that by reason of the endeavor to make such

running or flying switch said Charles Smith, while he was upon the street at the crossing of defendant's railway track, or at a place on defendant's track commonly used by the public as a passway, with the defendant's knowledge and consent, and such fact was known to the agents and servants of defendant operating said train, was run over and killed, without fault or negligence upon his part contributing proximately to said injury, and that such injury would not have happened but for the endeavor to make such switch, then you will find for plaintiffs."

The effect of the foregoing charge is to inform the jury, that if other railroad companies exercising care and prudence in the conduct and management of their trains prohibit flying switches, then it would be negligence for defendant's employes to make them.    There is no statute nor positive rule of law which forbids the making of 'flying' or 'running' switches, and it can not be declared by the court to be negligence; nor can the question of negligence be made to depend upon what other railroad companies forbid or permit to be done.    Whether or not the making of the flying switch was negligence was a question of fact to be determined by the jury under all the circumstances of the case.    Railway v. Evansich, 61 Texas, 3; Railway v. Compton, 75 Texas, 667.

In the case of Railway v. Evansich, supra, the defendant asked the court to instruct the jury: "If you believe from the evidence that the turntable of defendant was built in a proper manner, upon its own property, and that it is and has been customary upon railways generally to leave turntables unlocked and unguarded, and that such custom and practice is reasonable, and such as an ordinarily prudent person might be expected to exercise, then you will find for the defendant." Speaking of this charge the court said: "It was also calculated to induce the jury to believe, if other railroads usually kept their turntables unlocked and unguarded, and that with such railways it was a reasonable and prudent manner of keeping them, that it followed, as a matter of course, that the failure of the appellant to secure its turntable would not be negligence."    If the fact that other railroad companies prohibited flying switches would establish the proposition that the act done was negligence, then the fact that the same act was permitted and practiced by such railroads would establish that the act was not negligence, as was contended for in Railway v. Evansich.    The charge asked in the case just cited above was not so objectionable as the one under consideration, for in that charge it was made to depend also upon the further fact, that such custom and practice were reasonable, and such as a prudent person would do under like circumstances. In the charge given in this case the acts of other railroad companies are made the absolute standard of judgment.

In Railway v. Compton, cited above, the court charged the jury with regard to the custom of other railroad companies in sending out water trains, and this court said: "We are of the opinion that the mere fact that railroad companies generally adopted such a custom would not make it negligent in the defendant company to fail to observe it, provided the method of operating its train was in point of fact reasonably safe."

There is another sound objection to the charge, which is, that it makes the rules of corporations applicable to all conditions under which the act may be done the standard by which to judge of this act. The law prescribes, that the degree of care to be exercised by the railroad company shall be such as "a man (or person) of ordinary prudence and caution would use under the *same* circumstances. The man is a human being, possessed of both intellect and conscience, and is expected not only to exercise his judgment, but his humanity will dictate the doing of anything that is reasonably necessary to avoid taking human life or inflicting serious injury upon a human being." His conduct is governed by the circumstances of each particular case, whereas a corporation's rules are made to govern its employes under all conditions, and are not ordinarily dictated by other considerations than immunity from liability for damages, or the preservation of its property.

The District Court erred in the first, fifth, and sixth sections of its charge, for which errors the judgments of the District Court and the Court of Civil Appeals are reversed, and this cause is remanded.

*Reversed and remanded.*

Delivered December 3, 1894.