Weatherford, Mineral Wells & Northwestern
Railway Company v. M. J. Duncan.

No. 1791.

1. **Costs—Contest of Affidavit of Inability to Secure.**—Plaintiff having filed an affidavit of inability to secure the costs, a contest thereof filed by the defendant and sheriff was stricken out because of the failure of the clerk to join in the contest. *Held*, that whether or not article 1438 of the Revised Statutes restricts the right of contest, in this case, to the clerk alone, yet, the case having been tried on its merits and judgment rendered for plaintiff, the action of the court in striking out the contest was not a matter of which the defendant could complain on appeal.

2. **Evidence—Explaining Absence of Eye-Witnesses.**—The testimony having disclosed the presence of other eye-witnesses to the accident complained of, it was permissible for plaintiff to show that he had endeavored by subpœna to secure their attendance, and incidentally their whereabouts, and that they were employes of the defendant.

3. **Evidence—Custom—Flying Switch.**—In an action against a railway company for death resulting from making a "flying switch" in rainy and freezing weather, when, because of the ice, the braking gear could not be operated, defendant offered evidence that it was the general custom of railroads to make flying switches, but not that it was the custom to make them under the above conditions. *Held*, that the evidence was properly rejected.

4. **Contributory Negligence—Charge of Court.**—See the opinion for a definition of contributory negligence and application of the rule in the charge of court, held correct in an action against a railway company for causing the death of a brakeman by use of the "flying switch."

5. **Railway Company—Personal Injury—Volunteer.**—Where an employe of a coal company went upon the cars of the defendant railway company in the discharge of his duty and to prevent injury to his employer's property from defendant's negligence, he was not a volunteer, and is entitled to recover for injuries resulting from such negligence.

Appeal from Parker.    Tried below before Hon. J. W. Patterson.

*Martin & Hutchinson* and *W. A. Bonner*, for appellant.

*Kuteman & Littleton*, for appellee.

Tarlton, Chief Justice.—The appellant prosecutes this appeal from a judgment in the sum of $6000, recovered by the appellee, Mrs. M. J. Duncan, as the surviving wife of Frank Duncan, deceased, and as the next friend of the four minor children of herself and Frank Duncan. The recovery was had on account of the death of Frank Duncan, which occurred on January 17, 1893, and which the plaintiff alleged to be due to the negligence of the defendant, the appellant railway company.

On the issues made by the pleadings and the evidence, and perforce of the verdict of the jury, we find the following conclusions of fact:

The accident resulting in the death of Frank Duncan occurred at Rock Creek, a station on the line of the railway of the appellant, about

eighteen miles northwest of Weatherford, in Parker County. At this place the Texas Coal and Fuel Company, a corporation, at that time operated a coal mine, where coal was delivered by it to the railway company for the purpose of transportation. The two corporations were operated in accordance with a joint arrangement, and under the supervision and control of the same officers; that is, the president, the secretary, and the treasurer of each corporation were the same persons.

About 400 yards east of the place where the accident occurred, a switch track leaves the main track of appellant's line; and at a point about 200 feet east of the scene of the accident, a second switch track occurs. Both switch tracks are south of the main track of the company's line, coursing parallel with it, all three of the tracks, however, being more or less curved. The shaft which goes into the coal mine some 200 feet west of the point where the second switch track begins is south of the main railroad track about 30 or 40 feet. The two switch tracks intervene between the shaft and the main track. At a point on the north switch track north of the coal shaft was a platform scale, the platform being used for the purpose of holding cars loaded with coal. A coal chute was fixed to this platform, so that when the coal was drawn up from the shaft it went about 20 feet above the ground to a platform extending over the scale, whence it was poured through the coal chute into the car on the scale platform. The chute was constructed with wings that entered the door of the car on the scale platform. These wings were hung with chains, and any abrupt movement of a box car thus connected with the chute would injure the latter.

Frank Duncan was in the employ of the Texas Coal and Fuel Company, in the capacity of coal trimmer. On the occasion in question a box car connected with the coal chute in the manner indicated was being loaded with coal, under the control of Duncan. This car was partly loaded. East of it, on the north switch track, about 40 or 50 feet, was an empty box car, and about 10 feet east of the latter, on the same track, was a flat car loaded with slate. These empty cars were under the control of Duncan. He was charged with the duty of connecting the wings of the chute with the car that was being loaded, and to see that it was properly protected, and when loaded to move it off and substitute it with the next empty car.

About 12 o'clock of the day mentioned, a train of the appellant company going west came into the station. On reaching the east switch track they switched upon it, by a "flying" or a "drop" switch, three or four empty flat cars. This was done negligently, and with such speed and force, and with such want of precaution, that they ran violently down the north or scale switch track, striking the flat car loaded with slate, and propelling it against the empty box car. In the meanwhile, in order to prevent the box car from being thrown against the car upon the scale platform, Duncan had climbed upon the former and was in the act of reaching for the brake, in order to fasten or tighten it, when the collision occurred, and he, as a consequence,

was thrown over the brake wheel on the track in front of the car loaded with slate, which passed over his body and immediately killed him.

In ascending the empty box car for the purpose indicated, Duncan was not in a position to reasonably appreciate the force with which the cars were switched upon that track or the speed at which they were going, though the circumstances were such as to require him to engage as he did in an endeavor to so apply the brake as to protect the car which was being loaded with coal, or to justify him in so doing. He was not guilty of contributory negligence, nor in attempting to prevent the collision with the car on the platform scale was he a volunteer. He was, on the contrary, discharging a duty which he owed the Texas Coal and Fuel Company, in protecting its property from injury.

*Opinion.*—On motion of the defendant, the plaintiff was required to give security for costs. She filed an affidavit, that "she is too poor to pay the costs of the court in this case, and that she is unable to give security therefor." The defendant and the sheriff of Parker County filed a contest denying the truth of the affidavit. The clerk of the court, however, refused to join in the contest. The court sustained a motion of the plaintiff to strike out the contest, "because the same shows on its face that the clerk of this court had refused to join therein."

In this there was no error of which appellant can here complain. Article 1438, Revised Statutes, names but two officers who shall have the right to contest the affidavit of inability, viz., a justice of the peace, in a court of that officer, and the clerk, in a court of record. If we hold that this article should be so interpreted as not to restrict the right of contest to the officers named, it nevertheless follows that the action of the court in this instance should not of itself require a reversal of the judgment. If on the merits of the controversy the defendant was properly held liable, it was rightly adjudged to pay the costs. If otherwise, it would be our duty to reverse the judgment, without reference to this question. The question seems to us to have lost all practical importance, as to appellant at least, after appeal to this court.

Among the persons present at the scene of the accident in question were J. L. Hammond and M. J. Rigney. They were employes of the defendant upon the cars that were placed upon the switch track by the incoming train. Rigney was brakeman and Hammond was a clerk of the defendant, and the latter had for some reason undisclosed, save perhaps inferentially, by this record gotten upon the moving cars after they had entered the switch track and before the collision. Each of these employes was thrown down by the violence of the collision—Rigney upon his hands, and Hammond from the cars.

It appears from a bill of exceptions that these witnesses had been subpœnaed in behalf of the plaintiff, and that a witness for the plaint-

iff, Leach, also present on the occasion referred to, was permitted to testify, that "Hammond and Rigney were in the employment of the defendant; that they were not present as witnesses in the case; that Leach had seen Rigney on the morning of the accident on the cars and at the depot of the defendant; that he is a brakeman on defendant's road; that Hammond is in the employ of defendant as assistant agent at Rock Creek, a station on defendant's line of road; that Hammond told him (Leach) that he (Hammond) was going to the World's Fair, and he hadn't seen him for several days." The objection to this testimony is on the ground that "it is irrelevant, incompetent, and will tend to prejudice the jury against the defendant, by showing that the witnesses, being in the employ of defendant, are not here, and because it is not shown that the witnesses had been tendered their fees."

We are not prepared to hold that it was improper or immaterial that the plaintiff should account for the absence of persons eye-witnesses to the transaction, and naturally possessing an intimate knowledge of all the facts concerning it. The plaintiff had introduced two witnesses who were present on the occasion in question, and as the evidence disclosed the presence of the witnesses named, it was at least proper that the appellee should show an endeavor to secure the attendance of the remaining eye-witnesses, and incidentally thereto their whereabouts and their employment. The diligence used was sufficient as a basis even for an application for a continuance, without the proof of tender of witness fees. Dillingham v. Ellis, 86 Texas, 447.

It further appears from a bill of exceptions, that a witness (Bock) had testified for the defendant, that he had had fourteen years' experience in the railroad business, and was acquainted with the custom of railroads in regard to switching cars upon side tracks. It then offered to further prove by this witness, that it was the general custom of railroads to make "running" or "flying" switches, and that the running or flying switch made by defendant at the time of the accident complained of was made in the same way as is the usual and general custom of railroads to make. To this evidence the plaintiff objected, because the "general custom of other railroads has nothing to do with the case, and is immaterial and irrelevant," the attorney for the plaintiff stating at the time, that the plaintiff did not and would not claim that the mere making of the flying or running switch was negligence.

We approve the action of the court in sustaining the objection. The proposed testimony ignored the circumstances and conditions under which, according to the undisputed testimony, the running or flying switch was made in this instance. Thus the witness M. J. Rigney (introduced by the defendant towards the end of the trial) testified, that the weather on the day of the accident was rainy and freezing; that the brakes could not be kept on; that the brake wheels were full of ice and would fly off; that the notch in the little wheel for the catch was full of ice, and that it would slip off; that the track was covered.

with sleet; and that this condition of the weather had existed all the way from Weatherford. To render this testimony admissible, if indeed it could be so held under any circumstances, it would be necessary to show that other railroads were accustomed to make flying switches under the conditions here named.

In this connection, however, we refer to the opinion of Mr. Justice Brown, in the case of Railway v. Smith, 87 Texas, 348, wherein it is held, on a review of cases involving similar charges, that "The law prescribes that the degree of care to be exercised by the railroad company shall be such as 'a man (or person) of ordinary prudence and caution would use under the same circumstances.' The man is a human being, possessed of both intellect and conscience, and is expected not only to exercise his judgment, but his humanity will dictate the doing of anything that is reasonably necessary to avoid taking human life or inflicting serious injury upon a human being. His conduct is governed by the circumstances of each particular case, whereas a corporation's rules are made to govern its employes under all conditions, and are not ordinarily dictated by other considerations than immunity from liability for damages or the preservation of its property."

It will be noted from the bill of exceptions that the custom of other railroads in regard to switching cars upon side tracks, and not the care of a man or person of ordinary prudence under the same circumstances, was made the test of negligence in this proffered testimony.

The following is substantially the first paragraph of the court's charge: "If Frank Duncan was in the employment of the Texas Coal and Fuel Company, and if the company had a coal chute on the switch of defendant's road, where the Coal and Fuel Company loaded the cars of defendant, and if defendant furnished and placed its cars on the side track in order that they might be so loaded, and if it was the duty of Frank Duncan to assist in loading the cars as they were placed upon the chute, and if it was necessary in order to prevent the cars that were on the chute and on the side track from being displaced by cars that defendant was switching onto the side track, and if it was the duty of Frank Duncan to protect the chute and prevent the car thereon from being removed therefrom by cars that were being switched on the side track by defendant, and if you believe that Frank Duncan, for the purpose of protecting the coal chute, and of preventing the car that was then on the chute from being removed therefrom by the cars that were being so switched on the side track, got upon the car that was standing upon the side track above the chute for the purpose of placing the brakes on the car, and if while Frank Duncan was on the car for that purpose, the defendant by its agents and employes switched onto the side track certain cars at a high rate of speed and without an engine attached thereto, and by reason of the cars being turned onto the side track at such speed, the cars so turned on the side track by defendant's agents and employes

struck other cars then on the side track with such force as to throw Frank Duncan from the cars, and if he was so thrown from the top of the car on which he was and was run over and killed by the cars of the defendant, and if the agents and employes of defendant in turning or switching the cars on the side track at the speed described were guilty of negligence, and if the plaintiffs are the surviving widow and children of the said Frank Duncan, and if Frank Duncan was not himself guilty of negligence that contributed to his death, plaintiffs would be entitled to recover the damages, if any, they sustained by the death of Frank Duncan."

The issues of fact submitted to the jury in this paragraph were within the scope of the pleadings and the proof in this case. We so overrule the appellant's fourth assignment of error and its proposition thereunder.

On the issue of negligence and contributory negligence the court instructed the jury as follows: "Negligence is doing something that a reasonably prudent man would not do under the circumstances, or in not doing something that a reasonably prudent man would do under the circumstances. Contributory negligence is negligence not only upon the part of the one committing the injury, but also on the part of the one who is killed or injured, and by which they both contributed thereto. If Frank Duncan in getting upon the car for the purpose of placing the brakes thereon was under all circumstances guilty of negligence as herein before defined, and if you believe that this negligence on the part of Frank Duncan contributed proximately to his death, then the plaintiffs can not recover, although you may find that the agents of the defendant were guilty of negligence in switching the three cars on the side track."

We think that this instruction, under a reasonable interpretation, fairly submitted to the jury the issue of negligence and contributory negligence, and that it obviated the necessity of granting the special instructions requested under the issues. We so overrule the fifth and eighth assignments of error.

The propositions asserted under the sixth, seventh, and ninth assignments assert, in effect, the contention that Duncan was a volunteer at the time of his death, and so should be held to have assumed all the risks incident to the business in which he was engaged, which fact precludes a recovery in this case. If under any phase of the evidence Duncan might be regarded as a volunteer, the rights of the defendant were on this issue sufficiently guarded by the following instruction of the court: "The plaintiffs can not recover in this case unless the jury believe that Frank Duncan was at the time he was killed discharging a duty he owed the Texas Coal and Fuel Company in protecting its property or interests from injury." Under this charge, if Duncan was discharging the duty referred to, he was not a volunteer. If he was not discharging that duty, the defendant was exonerated. We think that the verdict of the jury finds support in the evidence and the law

as properly given in charge, and we consequently overrule the tenth and final assignment of error.

The judgment is affirmed.

*Affirmed.*

Delivered May 3, 1895.

Writ of error granted, and judgment affirmed by the Supreme Court.