G. A. DUERLER MANUFACTURING COMPANY v. JOSIE EICHHORN.

Decided January 9, 1907.

1.—Sickness or Health—Testimony—Opinion of Nonexpert.

The opinions of nonprofessional men upon questions of health and sickness are admissible in evidence, and even as to questions involving scientific knowledge such evidence is admissible if the witness gives the facts upon which his opinion is based.

2.—Brief—Insufficient Statement.

When appellant's brief does not contain a sufficient "statement" to enable the Appellate Court to pass upon an assignment of error, the assignment can not be considered.

3.—Improper Argument.

Even though the plaintiff was a girl, and one who worked for wages, it was reprehensible in her counsel to speak of her before the jury as "a penniless girl," and thus seek to warp their judgment by sympathy.

4.—Master and Servant—Concurring Negligence.

If the negligence of a master concurs with that of his servant in inflicting an injury upon another servant the master is as liable for the consequences as though his act of negligence were the sole cause of the injury, and this, though the injury may not have occurred but for the negligence of the servant.

**5.—Fellow Servant—Pleading—Charge.**

Where, in a suit for personal injuries, the defendant pleads negligence of a fellow servant, the court in submitting the issue to the jury, should confine them to the very servant and very acts of negligence of such servant pleaded by the defendant.

**6.—Same—Evidence.**

In a suit by an employe for personal injuries caused by the falling of a barrel from a loft overhead evidence considered, and held to show no negligence on the part of a coemploye, and therefore not to require a charge on that issue.

**7.—Employes—Safe Place to Work.**

The duty of an employer to exercise ordinary care to provide a reasonably safe place for his employes to work is personal to the employer, continuous and nondelegable.

**8.—Assumed Risk.**

In a suit by an employe for personal injuries caused by the falling of a barrel from overhead while she was engaged in her work below, and who was unfamiliar with the manner in which the barrels were stored, and whose duty did not require her to inspect or to familiarize herself with the situation of the barrels, such employe had the right to rely on the assumption that her employer had discharged his duty to his employes in providing a safe place for them to work, and, although she had worked there some time, she did not assume the risk of injury from the falling barrel.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Keller & Keller,* for appellant.—Non-expert witnesses should testify only as to matters of fact, which come to their observation or knowledge, and leave the jurors to draw their own conclusions from the facts and circumstances testified to. Haynie v. Baylor, 18 Texas, 509; Purnell v. Gandy, 46 Texas, 199; Mutual Life Ins. Co. v. Hayward, 34 S. W. Rep., 804; Houston & T. C. R. R. Co. v. Smith, 52 Texas, 186.

The rule that a witness who is an expert must give the facts on which he rests his opinion before he will be allowed to state what that opinion is, applies to one who is not a physician and by whom it is proposed to prove the condition of health of a party. Southern Life Ins. Co. v. Wilkinson, 53 Ga., 535; Wilcox v. State, 28 S. W. Rep., 312; Holland v. Zollner, 37 Pac. Rep., 231.

The court erred in not granting a new trial herein, because of the language used by plaintiff's attorney in his closing argument to the jury, where he referred to the plaintiff as a "penniless girl," as it was but an appeal to the sympathy of the jury and was improper and was calculated to and probably did influence the jury. Rule 39 for District Courts; The Oriental v. Barclay, 16 Texas Civ. App., 211; Houston & T. C. R. Co. v. Patterson, 57 S. W. Rep., 677; Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas, 232; Ft. Worth & D. C. Ry. Co. v. Johnson, 5 Texas Civ. App.. 16; Chicago, R. I. & T. Ry. Co. v. Langston, 92 Texas, 713; Gulf, C. & S. F. Ry. Co. v. Younger, 10 Texas Civ. App., 147; Lone Star Brewing Co. v. Voith, 84 S. W. Rep., 1100; Thompson v. The State, 43 Texas, 273; Phoenix Assurance Co. v. Stenson, 63 S. W. Rep., 542; Moss v. Sanger, 75 Texas, 323; Baum v. Sanger, 49 S. W. Rep., 651; Missouri, K. & T. Ry. Co. v. Huggins, 61 S. W. Rep., 976; Fordyce v. Withers, 1 Texas Civ. App., 544; Greenville Oil & Cotton Co. v.

Davenport, 37 S. W. Rep., 625; Galveston, H. & H. R. Co. v. Cooper, 70 Texas, 69; Illinois C. R. R. Co. v. Proctor, 89 S. W. Rep., 716.

The question of plaintiff's nationality or poverty is irrelevant and immaterial to any issue in a suit for damages, and where counsel indulges in improper argument relative thereto the court should grant a new trial. Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas, 234; Moss v. Sanger, 75 Texas, 321; Houston, E. & W. T. Ry. Co. v. McCarty, 89 S. W. Rep., 807; Dallas Con. & E. St. Ry. Co. v. Black, 89 S. W. Rep., 1088; Wichita V. M. & E. Co. v. Hobbs, 5 Texas Civ. App., 35; Willis & Bro. v. McNeill, 57 Texas, 474; Chicago, R. I. & T. Co. v. Langston, 92 Texas, 713; Garritty v. Rankin, 55 S. W. Rep., 368; The Oriental v. Barclay, 16 Texas Civ. App., 211.

An improper remark of counsel in argument is not rendered harmless by his saying that he takes it back. Dillingham v. Scales, 78 Texas, 206; St. Louis & S. W. Ry. Co. v. McLendon, 26 S. W. Rep., 307; McHenry Coal Co. v. Sneddon, 34 S. W. Rep., 228.

If the counsel for the successful party uses abusive or improper language as to witnesses or parties, the Appellate Court should reverse the case where the preponderance is against the verdict, or the verdict is excessive. Dillingham v. Scales, 78 Texas, 206; Hanna v. Gulf, C. & S. F. Ry. Co., 65 S. W. Rep., 494; Willis v. Lowry, 66 Texas, 540; Beville v. Jones, 74 Texas, 154; Wichita V. M. & E. Co. v. Hobbs, 5 Texas Civ. App., 35; Moss v. Sanger, 75 Texas, 323; Chicago, R. I. & T. Ry. Co. v. Langston, 92 Texas, 713; 2 Enc. Pl. and Prac., 738.

All who serve the same master, work under the same control, derive authority and compensation from the same source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow servants, who take the risk of each other's negligence. Brunell v. Southern Pac. Co., 56 Pac. Rep., 129; Kirk v. Atl. & C. Air Line Ry. Co., 55 Am. Rep., 621; Olmstead v. City of Raleigh, 41 S. E. Rep., 292; Brown v. Central Pac. Ry. Co., 7 Pac. Rep., 447; Missouri, K. & T. of Texas v. Whitaker, 11 Texas Civ. App., 671.

When plaintiff applied for work at defendant's "Pecan Factory," with knowledge of the manner and circumstances under which it carried on its business, having worked there before, she assumed all the risks incident to such employment, including negligence of fellow servants, and all dangers which are obvious and plain. Hightower v. Gray, 83 S. W. Rep., 254; Wells, Fargo & Co. v. Page, 68 S. W. Rep., 528.

*C: A. Davies,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Miss Eichhorn against appellant, a private corporation, to recover damages for personal injuries inflicted by the negligence of the defendant while she was employed in its service. The defenses pleaded were assumed risk, contributory negligence, and negligence of her fellow servants. The trial resulted in a judgment in her favor for $5,000.

On November 14, 1904, while plaintiff was at work as defendant's servant in its pecan factory, a barrel fell from the joist overhead upon her head, knocked her down and inflicted upon her serious and permanent

physical injuries. Its fall was caused by defendant's negligence in placing the vessel insecurely on the joist above the floor of the building where his servants, among whom was plaintiff, were required to do their work. The plaintiff did not assume the risk of such negligence, nor was she guilty of any negligence proximately contributing to that of defendant which caused her injury, nor were her injuries inflicted through any negligent act of a fellow servant. The damages sustained by reason of defendant's negligence were as assessed by the jury.

The courts and text writers, without reference to any recognized rule or principle, all concede the admissibility of the opinions of non-professional men upon the questions of health and sickness. The question of good or ill health of an individual requires no scientific knowledge to enable one who is well acquainted with him to form an opinion upon it. One man hardly ever meets another without forming an opinion as to his health, which arises from his observation and the appearance of the particular individual. Therefore, we have no doubt that the following testimony of Mrs. Lusk, who had known plaintiff for twelve years, viz.: "She was always in good health while I have known her up to November 14, 1904. Her health was always the same up to that time. Since November 14, 1904, her health has not been good at all. She has fallen off in weight, this condition of her health has lasted ever since November 14, 1904," was competent to show the state of plaintiff's health before and after the date of her injury. Besides, the witness testifies specifically to facts which, if true, show the ill health of plaintiff after she was struck by the falling barrel. Even as to questions involving scientific knowledge, such as mental condition, etc., a non-expert may testify as to his opinion, if he give the facts upon which it is based. (Galloway v. San Antonio & G. Ry. Co., 78 S. W. Rep., 33.) We therefore overrule appellant's second assignment of error; and the third, fourth, fifth and sixth which complain of testimony of the same character.

Counsel for appellee asked Dr. Hooker this question: "I will ask you whether or not a person who has been standing up and who has been hit by a barrel weighing from 20 to 28 pounds and had been knocked unconscious by the barrel and had fallen to the floor backwards, whether or not that condition you found existing, could or could not have been produced by that fall?" And the witness answered same by saying: "Why, I think it undoubtedly could." The question and answer were objected to by appellant upon the ground that no predicate had been laid for the question, but it assumed as facts the matters embodied, as though testified to, and permitted the witness to decide a question which should have been left to the jury. We are unable to determine from the statement in appellant's brief whether or not a sufficient predicate was laid to authorize the question which called for the witness' opinion; for it does not show what testimony, if any, had been introduced in regard to the matters embraced by the interrogatory. Therefore, the question raised by the seventh assignment of error is not presented by the brief in such a manner as entitles it to consideration.

We can not perceive there was anything wrong in appellee's counsel, in his address to the jury, though nearly all its members were Germans,

speaking of his client as "this honest German girl," and asking a verdict in her favor—it not appearing that he sought the verdict because she was an "honest German girl," but upon the ground she was entitled to it under the evidence from the jury regardless of the nationality of its members or of plaintiff. Though such characterization of his client may not have been authorized by any testimony in the record, she was the principal subject matter of the testimony; and if she were German and the members of the jury Germans, it must have been apparent to the jury that she was a German girl, and the law presumed her to be an "honest girl." But counsel, in his speech to the jury, spoke of Miss Eichhorn as a "penniless girl." He ought not to have done that. A verdict should not be sought upon anything save evidence in the record pertinent to the issues in the case, for it rests upon nothing else. The strongest guard that conscience can muster should be placed over a jury where there is "a woman in the case," and her lawyer ought to be satisfied with the fact that his client is a woman, and not "roll it under his tongue as a sweet morsel," that she "is penniless" and throw it out for the jury to ruminate upon, lest it excite the sympathy of its members and put conscience to flight and warp their judgment. But as "a wise man foreseeth danger and shunneth it," the trial judge instructed the jury not to consider the remark of counsel as to her being a "penniless girl," saying that plaintiff's condition had nothing to do with her right to recover. Plaintiff's counsel also asked the jury not to consider the remark, but to find a verdict alone upon the facts. It should be presumed, therefore, that the jury regarded the instruction of the court, and its verdict was not influenced by the remark.

The eighth and ninth assignments of error complain of the court's not granting the appellant a new trial because of uncalled for strictures of appellee's counsel on the character of two doctors who testified in the case. It is not shown by the statement in appellant's brief that the testimony of the two gentlemen, or of either, was favorable to defendant, or material to any defensive issue. Therefore, we can not say that there is any reason to believe that the appellant was prejudiced by this pasquinade of counsel. We can hardly think, however, if the testimony was material, the jury could have been affected by the gratuitous assault upon the character of the witnesses, who are reputable, learned and skilled physicians. Such conduct would be more likely to injure plaintiff's case than defendant's.

Special charges numbers 2 and 3 define the term "fellow servant," and numbers 5 and 6 seek to have the doctrine of fellow servant applied to the case. In passing upon the assignments of error which complain of the court's refusal to give them, we do not think that they should be considered separately as though they were detached and had no connection one with the other; but they should be construed together as a whole, and passed upon in connection with the main charge of the court, in view of the case made by the pleadings and evidence. It will be noted from our statement of the case that defendant pleaded negligence of plaintiff's fellow servants as the proximate cause of her injuries. This defense was not submitted by the main charge of the court. Therefore, if there was any evidence tending to prove such defense, it was the duty

of the court to give the special charges if they embodied a correct enunciation of the law applicable to such defense.

There is no question about Frank Martinez, who plaintiff claims caused her injury, being her fellow servant; and it was unnecessary for the court to define "fellow servant" and submit the question as to whether they sustained such relation to each other; but, if there was any evidence tending to show that he was negligent and such negligence caused her injuries, the court should have simply told the jury that they were fellow servants, and submitted the issue as to whether his negligence caused her injuries. Therefore, we need not further notice the two first special charges mentioned; but will confine ourselves to the consideration of the question whether either special charge number 5 or 6, or both, should have been given as requested. By number 5 the court was requested to instruct the jury, "that if the evidence shows the injury complained by plaintiff was caused by negligence of a co-employe, and the evidence does not show that there was a want of care by the defendant in selecting said servant, then the plaintiff can not recover and you should find for the defendant." And number 6, is as follows: "If the jury believes from the evidence that Frank Martinez was a fellow servant of plaintiff, and that Martinez was directed by the foreman of defendant to procure a barrel, it was his duty to perform the act with ordinary care, and would not authorize or require him to do it carelessly, and if said servant performed such act in a manner to cause injury to plaintiff the negligence would not be in the direction of the work, but in the manner of executing the order, and defendant would not be liable therefor."

It would seem that, under a proper construction, the latter charge does not submit the question of the negligence of Martinez at all, but assumes that if he performed a certain act in such a manner as to cause plaintiff's injury, the defendant would not be liable for the manner of its performance. The questions which should have been submitted, conceding there was any evidence on the issue, was, whether he was negligent in the performance of such act; and if so, whether such negligence proximately caused the injuries complained of. And it should have been so framed as to exclude any concurring negligence of defendant before authorizing a verdict in its favor by reason of the negligence of Martinez, if any were shown on his part. For if the negligence of the defendant concurs with that of another, though it be that of a fellow servant of the plaintiff, in producing the injury, the defendant is as liable for the consequences as though his act of negligence were the sole cause of the injury. In such an event, the negligence of the other party does not exonerate, though the injury may not have occurred had his negligence not concurred with defendant's in producing it.

As plaintiff's action is not predicated upon negligence of the defendant in the selection of its servants, the clause, "and the evidence does not show that there was a want of care by defendant in selecting said servant," should be eliminated from special charge number 5; which would then read: "If the evidence shows the injury complained of was caused by negligence of a co-employe, then the plaintiff can not recover, and you should find for the defendant." By it the issue of the negligence of a fellow servant is presented in a general way without regard

to any specific act of negligence, or of any particular servant. A proper charge would have confined the jury in its consideration to the very acts of negligence of the fellow servant pleaded by defendant; and not, in its generality, have permitted the jury to take and consider any and all acts of plaintiff's fellow servants that it might deem negligent and the cause of her injury. Besides, it should have excluded consideration of the negligent act of a fellow servant as a defense if it was contributed to by the negligence of defendant in producing the injury.

It is not assigned as error, nor is it contended by appellant's counsel in their brief, that the special charges suggested that a charge upon the question whether the injury complained of was proximately caused by the negligence of a fellow servant, should be submitted, and that in view of such suggestion, the court ought to have prepared and given the jury a proper charge upon the subject. In the absence of such an assignment, no such question is before us, nor can it be passed upon. (Equitable Assur. Co. v. Maverick, 78 S. W. Rep., 560; First Nat. Bank v. Moor, 34 Texas Civ. App., 476; Metcalfe v. Lowenstein, 35 Texas Civ. App., 619.)

If, however, it should be conceded that the special charges or either of them contained a correct enunciation of the law, before it would be applicable it would be essential that there was some evidence tending to show that negligence of plaintiff's fellow servant caused the injury. Of such evidence there is not a scintilla. Martinez simply obeyed the order of his foreman in going upon the joist to get a barrel to put the pecans in when hulled. This act of obedience can not be said to tend towards negligence. In pursuance of it nothing was done by him other than would have been done by any man of ordinary care. Nor is any act of his pointed to as negligence save the mere act of obedience to orders. It is shown by the evidence that the barrel was so placed on the joist that it would be liable to fall if one went upon the joist where all the barrels were stored. It was not shown that either Martinez or plaintiff knew that appellant had set such a trap, in the nature of a deadfall (whether intentionally or not, it makes no difference), which only had to be sprung by sending one upon the joists for a barrel. It was its duty to exercise ordinary care to provide a reasonably safe place for its servants to work. This duty was personal to the defendant, and continued from hour to hour, and from day to day. It was a non-delegable duty, and the act of the servant entrusted with its performance was the act of defendant, and it was negligence if the duty was not discharged. So it appears from the undisputed evidence that defendant was guilty of negligence in failing to use ordinary care to provide his servants a reasonably safe place to work, and that, even if negligence on the part of Martinez was shown, such negligence of defendant was the proximate cause of plaintiff's injuries. Therefore, we overrule appellant's twelfth, thirteenth, fourteenth and fifteenth assignments of error, which complain of the court's refusal to give said special charges.

The sixteenth assignment of error complains of the court's refusal to charge the jury at defendant's request, that if the jury should find that plaintiff had worked for defendant before and was familiar with the conditions under which her duties were to be performed and chose to accept the employment or to continue in it, she assumed such risks

and dangers as were incident thereto; and that if she accepted service of the defendant with the knowledge of the manner and circumstances under which it carried on its business, she assumed not only all the risks incident to such employment, but all dangers which were plain and obvious. The law on the phase of the case involving assumed risk is fully covered by the court's general charge, and special charge number 1, given at defendant's request. Besides, it may be doubted whether the evidence was such as authorized the submission of any such issue; for it does not tend to show that the plaintiff knew the barrel which fell was insecurely placed on the joists. She worked on the floor below, never had any occasion to go above where the barrels were stored, and could not discover their instability from the place where she worked. No duty of inspection rested upon her, and she could confidently rely upon the assumption that defendant had not augmented such risk as was ordinarily incident to her employment by failing to discharge any duty it owed its servants.

The seventeenth assignment of error complains of the refusal of the court to grant a new trial upon a ground that presented an issue of fact upon which the testimony, elicited on hearing the motion, was conflicting. The trial judge was in a much better attitude to decide the question than we are. It is enough for us to say that the court below having decided the question of fact upon which the motion hinged, and there being evidence to sustain its finding, it is not our province to disturb it. (Corralitos Co. v. Mackay, 72 S. W. Rep., 624.)

Our conclusions of fact dispose of the eighteenth, nineteenth, twenty-first, twenty-second assignments of error adversely to appellant.

The twenty-third and twenty-fourth assignments of error are without merit and are overruled.

There is no error assigned requiring a reversal of the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.