**GALVESTON, H. & S. A. RY. CO. v. CONTOIS.　(No. 7455.) ***

(Court of Civil Appeal of Texas. San Antonio. Dec. 23, 1925. Rehearing Denied Feb. 3, 1926.)

**1. Master and servant ⬧135—Employer justified in using commonly used methods.**

In doing particular work, the employer is not always bound to use the safest method, but is justified in using some of several methods at hand, recognized and commonly used in doing the work.

**2. Master and servant ⬧137(1)—Claim that striking chisel, causing injury to eye by flying metal, was not negligence, unless done with unusual force, held untenable.**

In employee's action for negligence, claim that striking of chisel by fellow employee on iron grating, being held by plaintiff, with such force as to cause a piece of metal to fly in plaintiff's eye, does not create an inference of negligence or warrant finding of negligence, unless fellow employee struck with unusual and unnecessary force, is untenable.

**3. Master and servant ⬧137(1) — Striking chisel causing injury to eye by flying metal may be done with such excessive force as to be negligence.**

Where employee was holding grating being chiseled by a fellow employee, negligence may not alone be predicated on sole fact that blow was such as to make metal fly off and strike employee's eye, but striking of metal may have been done with such excessive force as to become negligent.

**4. Master and servant ⬧258(18) — Employee not required to plead use of unusual force in striking metal, causing injury to eye by flying particles.**

Where employee, in action for damages, alleged that fellow employee negligently struck chisel on grating, held by plaintiff, with such force as to cause a piece of metal to fly off and strike him in the eye, it was not necessary to further plead and prove that fellow employee used unusual and unnecessary force, since this would confine negligence to unusualness of the blow rather than question of ordinary care.

**5. Master and servant ⬧135 — Customary striking of severe blows on metal held no justification for striking blow causing injury to eye by flying particles; ordinary care being question of fact.**

In action for injuries by employee, struck by flying metal from grating, held by him, and being chiseled by fellow employee, it is no defense or justification that on other occasions it had been customary for fellow employee to strike severe blows, but such matter raised a question of fact as to whether fellow employee used ordinary care in striking same blow while he had a helper whose person might be harmed by flying particles driven with negligent force.

**6. Master and servant ⬧293(18)—Charges on negligence in striking chisel, causing injury to eye by flying metal, held proper.**

In action for injuries by employee, struck by flying metal from grating, held by him, and being chiseled by fellow employee, where evidence showed it to be unnecessary to strike a severe blow, and that chisel, when carefully hit, would not cause chips to fly, charges to the effect that issue of negligence is based upon force with which chisel was struck *held* proper.

**7. Trial ⬧352(4)—Question in charge as to whether employer was negligent in permitting grating to be cut with hammer and chisel held proper, without finding that it was a dangerous or improper method of doing work.**

In action for injuries by employee struck by flying metal from grating, held by him, and being chiseled by fellow employee, question in charge whether defendant was negligent in permitting grating to be cut with a hammer and chisel was proper, without requiring a finding that it was a dangerous or improper method of doing the work.

**8. Master and servant ⬧278(17)—Finding of negligence in permitting iron grating to be cut with hammer and chisel held supported by evidence.**

In action for injuries by employee, struck by flying metal from iron grating, held by him, and being chiseled by fellow employee, finding that employer was negligent in permitting a grating to be cut with a hammer and chisel *held* supported by the evidence.

**9. Master and servant ⬧286(27)—Negligence in doing work held question for jury, though done by method commonly used.**

Proof that work was done by method commonly used does not relieve master of ordinary care or negligence; it being at least an issue of fact for the jury, and it is no defense to the negligent act that it was done in the usual way.

**10. Master and servant ⬧278(17)—Evidence held to show negligence as to employee injured by flying metal while holding chisel.**

In action for injuries by employee, struck by flying metal from grating, held by him, and being chiseled by fellow employee, evidence *held* sufficient to sustain verdict on issue of negligence.

**11. Appeal and error ⬧1002—Findings of jury on conflicting evidence cannot be set aside.**

Findings of jury on conflicting evidence cannot be set aside.

**12. Master and servant ⬧270(15)—Evidence as to other methods of doing work held competent.**

In action for injuries by employee, struck by flying metal from grating, held by him, and being chiseled by fellow employee, where employer showed that cutting metal with hammer and chisel was commonly used, it was competent for employee to show that other methods were employed in this line of work, as affecting question of ordinary care in using particular method.

⬧For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

　　*Writ of error granted March 24, 1926.

**13. Master and servant ☞270(14)—Testimony as to use of goggles held admissible.**

In action for injuries by employee, struck by flying metal from grating, held by him, and being chiseled by fellow employee, admission of testimony as to use of goggles to protect eyes when metal is cut with a chisel, elicited on cross-examination, in reply to defendant's contention that cutting metal with hammer and chisel was a safe method where goggles were not used, was not error.

**14. Master and servant ☞276(1)—Evidence held not to show employee, making grating for railroad track, was engaged in interstate commerce.**

In action for negligent injury by employee, engaged in preparing a grating to be used in a draining ditch on defendant's railroad tracks, evidence held not to show that employee was engaged in interstate commerce, and hence doctrine of assumption of risk did not apply.

**15. Jury ☞131(4)—Refusal to permit jurors to be questioned as to whether they thought injured railroad employee should be compensated, though nobody was at fault, held not error.**

In action by employee against railroad, refusal to permit defendant to question jurors as to whether they thought employee of railroad, injured on job, ought to be compensated, though nobody was at fault, was not error, in view of complete voir dire examination permitted by the court.

**16. Appeal and error ☞968—Conduct of trial court in preliminary selection of jurors not ground for reversal, in absence of abuse.**

Trial court's conduct in preliminary selection of jurors on their voir dire will not be cause for reversal unless arbitrary action and abuse of authority is shown.

**17. Appeal and error ☞688(3)—Alleged misconduct of jury in failing to diminish damages held not shown.**

Alleged misconduct of jury, in failing to diminish damages in proportion to amount of negligent, and you should answer said question it being shown that verdict was diminished.

**18. New trial ☞143(5)—Impeachment of jury verdict by written or oral testimony not permitted for alleged misconduct in failing to diminish verdict.**

Under Rev. St. art. 2021, permitting impeachment of jury for misconduct, written ex parte statements or oral testimony to impeach jury's verdict should not be allowed, on motion for new trial for alleged misconduct of jury in failing to diminish their verdict, which was not in fact shown; the right to impeach being strictly limited to real misconduct.

**19. Damages ☞173(1)—Testimony as to employee's compensation in army 5 years before injury held proper.**

In employee's action for negligent injury, testimony by employee as to compensation received while in the army, 5 years before date of injury, held not irrelevant, immaterial, or too remote in time.

**20. Appeal and error ☞1060(2)—Permitting counsel to ask questions and withdraw them on objection without answer held not prejudicial.**

Permitting plaintiff's counsel to ask questions and withdraw them on objection without permitting an answer, held not prejudicial to defendant; it being up to jury and judge to determine whether purpose was to unduly influence jury.

**21. Trial ☞132—Statement of counsel to jury, "nearly every prospect that plaintiff has is in your hands," withdrawn on objection, held not to unduly influence jury.**

In action for injuries to employee, causing loss of eye, statement by plaintiff's counsel to jury, "nearly every prospect that plaintiff has is in your hands," withdrawn on objection, and which jury was instructed not to consider, held not to be inflammatory or as tending to unduly influence the jury.

**22. Damages ☞132(14)—No misconduct in arriving at $10,000 verdict shown.**

In action for injuries to 31 year old employee, earning, prior to injury, $175 and $200 per month, for loss of right eye, and 50 per cent. loss of vision of left eye, no misconduct in arriving at $10,000 verdict was shown.

On Motion for Rehearing.

**23. Master and servant ☞288(1)—Assumption of risk question for jury.**

Whether an employee assumes risk of employment is a question of fact for the jury.

**24. Master and servant ☞218(9) — Risk of negligent blow held not assumed by inexperienced employee, struck by flying metal from iron grating chiseled.**

In action for injuries by employee, struck by flying metal from iron grating, held by him, and being chiseled by fellow employee, employee who had never done such work could not have known that an unnecessarily severe blow would be struck, endangering him, and hence did not assume the risk of a negligent blow being struck.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Gilbert J. Contois against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellee.

COBBS, J. Appellee sued appellant to recover damages, alleging that on January 18, 1924, he was employed by that company as carpenter helper, and that he and the carpenter under whom he was working, Juan Castro, were directed by their foreman to cut a piece of iron grating, that he was holding the grating while Castro was cutting it

with hammer and chisel, and that a piece of metal flew off and struck him in the eye, causing the loss of his eye. He alleged that the company negligently caused the grating to be cut with hammer and chisel, and that Castro negligently struck the chisel with such force as to cause the piece of metal to fly off and strike him in the eye.

The defendant filed general denial, and pleaded specially: that that was a proper and usual way of doing such work, and it could be safely done in that way in the exercise of ordinary care; that plaintiff voluntarily attempted to assist Castro in cutting the grating; that he was contributorily negligent; and that he was employed in interstate commerce and assumed the risk.

The case was tried with a jury. The jury found in plaintiff's favor on both said issues of negligence alleged by him, that such negligence proximately caused or contributed to his injury, and that he did not assume the risk; but they found that he was contributorily negligent (a) in placing himself in such position as that pieces of metal that might fly off as the grating was being cut might strike him in the eye, and (b) in taking hold of and holding the grating while Castro was cutting it with hammer and cold chisel. The jury assessed his damages at $10,000. Judgment was entered in plaintiff's favor for said sum.

This whole case turns upon the pivotal point of law, well raised by the defense in various forms, and presented by general and special exceptions to the petition, and denying the sufficiency of appellee's pleading and the evidence, in stating and showing a cause of action, that appellant's employee was negligent while cutting the grating, and in striking the chisel by which the metal was cut, in such manner and with such force as to cause a piece of metal to fly into appellee's eye, with such force as to completely destroy the eye.

Appellant questions the sufficiency of the pleading and the evidence, and urges a failure to show an affirmative allegation, and the proof thereunder that the metal was struck with unusual and unnecessary force, and struck with a force that a person of ordinary prudence would not have used, contending in the absence thereof there could be no recovery herein. In other words, in doing the work it is urged the master required him to do, and the manner by which such work was usually done, no recovery could be had unless it was pleaded and proven that he struck with improper, unusual, or unnecessary force, and not in a way that a person of ordinary prudence would have struck, but only upon a theory that he struck with unusual and unnecessary force, and with a force that a man of ordinary prudence would not have used.

Briefly, the facts are: That a gang of five men, including appellee, were at work laying a drain to drain the rainwater across under the railroad tracks opposite appellant's passenger depot in San Antonio. On top of the ground they were placing small cast-iron grates, so that the rainwater could go down into the drain under the ground. These grates were about 12 inches one way, about 18 inches the other way, and were about one inch thick. The grates would not fit exactly in between the two rails of the railroad tracks; 4 of the grates being wider than the space between the rails, and 3 of them not being wide enough. In order to make an even fit, it became necessary to cut one grate about half in two, and then the three whole grates and about half of a grate would fill up the space between the two rails.

The court charged the jury by submitting special issues, and Nos. 2 and 3 are complained of especially, to wit:

"(2) Under the circumstances, was the defendant negligent in causing or permitting the grating to be cut with a hammer and chisel?" To which the jury answered, "Yes."

"(3) Did Castro strike the chisel with such force as to cause a piece of metal to fly in the plaintiff's eye?" To which the jury answered, "Yes."

"(3a) If you answer 'Yes' to question 3, then did Castro strike the chisel with a negligent degree of force?" To which the jury answered, "Yes."

"(3b) If you answer 'Yes' to question 3a, then did such negligence proximately cause or proximately contribute to plaintiff's injury?" To which the jury answered, "Yes."

Appellant objected to the issues, among other grounds, because there was no pleading to authorize their submission, for the reason that no inference of negligence arises from plaintiff's allegations to the effect that Castro struck the hammer and grating with such force as to cause a piece of metal to fly into plaintiff's eye.

In order to correct the supposed error in said special issues, appellant requested its special charge No. 3, which reads:

"You are instructed, in connection with question No. 3a, submitted to you in the court's main charge, that it would not have been negligence for Castro to strike the chisel with such force as to cause a piece of metal to fly into plaintiff's eye, unless he struck the same with unusual and unnecessary force, and with a force that a person of ordinary prudence would not have struck the same. Therefore you are instructed that, even though you should find that Castro struck the chisel with such force as to cause a piece of metal to fly into plaintiff's eye, he would nevertheless not be negligent, and you should answer said question 'No,' unless you believe and find from the evidence that he struck the chisel with unusual and unnecessary force, and that a person of ordinary prudence, in cutting the grating with hammer and cold chisel, could and would have struck the chisel with such force as not to cause a piece of metal to fly into plaintiff's eye."

The objection to the court's special issue and this requested charge of appellant were overruled.

Most of appellant's propositions are based upon the contention that the carpenter could not have been negligent in striking the chisel with such force as to cause a piece of metal to fly into plaintiff's eye, unless he struck with unusual force, and with the force that a person of ordinary prudence would not have used under the circumstances.

This defense is made to depend more upon the force used, rather than that he was engaged in a dangerous business and negligently struck the chisel with force to cause the piece of metal to fly in appellee's eye. How would the degree of force used to make it dangerous be determined by comparison with the necessary force to be used to accomplish the purpose? It is contended, if the work that was done was necessary, there was no negligence, unless the chisel was struck with a force that was unusual or unnecessary, and the injury resulted from such unusual and unnecessary blow, sufficient to cause the metal to fly in plaintiff's eye, does not raise an inference of negligence.

There is a line of distinction clearly defined and drawn in the cases of negligence cited by appellant, distinguishing this case from those cases. The distinction being in the defective instruments or tools used, such as in the case of Fasani v. Railway, 109 App. Div. 404, 96 N. Y. S. 415, Id., 190 N. Y. 515, 83 N. E. 1125, when a piece of metal was forced from the grating by a chisel with a blow from a hammer and struck plaintiff in the eye, of itself does not raise a presumption of negligence in the absence of proof that the chisel was in a dangerous condition; such is not the law in this jurisdiction. But the court intsructed the jury to ascertain whether the chisel was struck with such force as to cause a piece of metal to fly into plaintiff's eye; the issues submitted by the court based upon the fact that the carpenter struck the chisel with a degree of force which itself was negligent, having no reference to any defect in the tools used.

There is no complaint that the tool used was defective but that there were other, better, and safer ways of doing the work than with a chisel, such as with a drill, with a hacksaw, with an acetylene torch, etc., differing in degrees of safety, and the employer must use the safest method. Appellee's contention is that it was negligent to have the grating cut with a chisel, as it was done, because it was less safe than the other methods shown.

[1] This brings us to the very question to determine, whether cutting iron with the chisel was one of the methods ordinarily used, and as to whether it was as safe as the other means, and whether its use was not with ordinary care, which are all jury questions. To strike the chisel by tapping it gently would not perhaps be so dangerous, but might not accomplish much, so that to do the work in hand with the tools furnished required stronger blows. In doing the work, we do not believe the employer is always bound to use the safest method of work, but is justified in using some of the several methods at hand, recognized and commonly used in doing the work.

[2] We think the distinction attempted to be drawn, that Castro struck the chisel with such force as to cause the metal to fly into plaintiff's eye, does not create any inference of negligence, nor warrant the jury's finding of negligence, unless he struck with unusual and unnecessary force, is not tenable. The appellant cites, in support of its contention, Martin v. Highland Park Mfg. Co., 128 N. C. 264, 38 S. E. 876, 83 Am. St. Rep. 671, and other cases, among the number Missouri, K. & T. R. Co. v. Cobb, 60 Tex. Civ. App. 562, 128 S. W. 910.

[3] Castro was cutting the cast-iron grating with a hammer and cold chisel, and Contois was holding the grating while Castro was cutting. Naturally, in doing such work, pieces of metal would chip and fly off with more or less force, but, if the force used was moderate, no chips would fly off with very great force, because the character of the work was to make such indentures in the grating as that it would break at that particular point more easily. To do injury or make the chips fly off hard could be determined by the amount of negligent force used. Negligence may not alone be predicated upon the sole fact that the blow was such as to make the metal fly off and strike appellee's eye, but the striking of the metal may have been done with such excessive force as to become negligent.

Appellant contended there could be no recovery, unless Castro caused this piece of metal to fly off into plaintiff's eye by striking with a force that was unusual or unnecessary—negligence or not depended on that fact. The defendant raised this issue (a) by exceptions to the petition, (b) by objections to the charge, (c) by request to submit the issue whether Castro struck with unusual and unnecessary force, and (d) by special charge instructing the jury upon the law on this point.

[4, 5] We do not think the appellee was required, in addition to his pleading on negligence, to plead and prove that Castro caused a piece of metal to fly into plaintiff's eye by striking with a degree of force that was unusual or unnecessary. This limited the issue to too narrow a point, and confined the negligence to the unusualness of the blow, rather than to the question of ordinary care. It would permit appellee to pay no attention to the circumstances existing at the time and strike with force usually used to accomplish such purpose, the same as though no other person were present that might be endan-

gered by flying chips, for the man who was struck while holding the grate was in greater danger from flying chips than the man who was holding the chisel. The carpenter who was doing the striking knew that appellee was holding the grating at the time he struck the blow that caused the injury. It is no defense or justification that on other occasions it had been customary for him to strike severe blows; that did not justify him to strike with such force that constituted a lack of ordinary care towards his helper. It raised a question of fact as to whether the striker used ordinary care, and whether he must have known, though such method under ordinary circumstances was proper, usual, or customary, that it was not proper while he had a helper whose person might be harmed by flying particles driven with negligent force.

The case of Railway v. Cobb, supra, cited and relied upon by appellant, was overturned by the holding of our Supreme Court in Paris Railway v. Atkins, 111 Tex. 306, 234 S. W. 66.

[6] The court's charges were to the effect that the issue of negligence is based upon the force with which the chisel was struck. In response to these issues, the jury found that the carpenter struck the chisel with such force as to cause the piece of metal to fly into the plaintiff's eye, and that he struck the chisel with a negligent degree of force, which negligence was the proximate cause of the plaintiff's injury.

This charge seems to come under the rule established by the Supreme Court in Paris Railway v. Atkins, supra. The carpenter who struck the blow was a powerful man, and struck a very severe blow at the time the metal was sent to the appellee's eye, and, as stated in the testimony, the loss of the eye was due to "the awful hard blow that was hit." It was shown the harder the blow, and the more force used, will cause the chips to fly off. The carpenter himself testified that—

"You do not have to hit it hard. * * * If you struck it hard, the result would be it might not be good for you, because I might lose an eye, or hurt something. * * * This iron must not be struck hard, because it was cast iron. It would be improper to hit this iron too hard. * * * By hitting it carefully the chips will not fly."

The evidence is to the effect that it was unnecessary to strike a severe blow, and, when the chisel was carefully hit, the chips would not fly with such force as to cause injury. We do not think there was any error in the court's charge which submitted the real question of negligence, nor do we think the special requested charges of appellant embraced in the first six propositions and contentions added anything that would assist the jury on the question and are without merit.

[7] Appellant's seventh and eighth propositions bear upon the negligence in cutting the grating with a hammer and chisel, as submitted in question 2; the action of the court in overruling appellant's objections to question 2 of the charge, on the ground that said question authorized a finding of negligence "without requiring a finding that it was a dangerous or improper method of doing the work." Question 2 of the charge reads:

"Under the circumstances, was the defendant negligent in causing or permitting the grating to be cut with a hammer and chisel?"

The real objection to the charge is that the court should have called for an additional finding that it was a "dangerous or improper" method of doing the work. It was not required that the jury should specifically find that the work was either dangerous or improper. A finding that appellant was negligent in cutting the metal grating with a hammer and chisel would undoubtedly carry with it a finding that it was improper and therefore negligent. But it will be observed that appellant did not request the affirmative issue whether or not the method of doing the work was dangerous or improper. It was not necessary that this issue should have been submitted to the jury for a finding that it was dangerous or improper, and the proposition is overruled.

[8, 9] We overrule appellant's eighth proposition, that the jury's finding in answer to question No. 2 is not supported by the evidence. We do not agree with appellant's contention that negligence cannot be based on the doing of a thing in the way it is commonly done by everybody. We think and reaffirm the doctrine as set out by this court in Magnolia Paper Co. v. Duffy, 176 S. W. 89. In writing the opinion for the court, our Chief Justice said:

"It was for the jury to say whether ordinary care had been used in furnishing a machine without a foot brake and guard or fender. The mere fact that the machine was one customarily used for such purposes would not, as a matter of law, exonerate appellant from blame. It is the rule laid down by the Supreme Court of the United States, as well as the Supreme Courts of a number of states, that, after it has been shown that the defendant had used the same appliances used by other employers in the same line of business the question still was open as to whether the particular instrumentality was reasonably safe, and that it is an issue for a jury. * * *

"Even though instrumentalities are the same as those used by all others in the same line of business, it is held in Texas that the use of such appliances may be negligence, and it is for the jury to determine whether the use of the machine was negligence or not. Railway v. Evansich, 61 Tex. 3; Railway v. Smith, 87 Tex. 348, 28 S. W. 520; Railway v. Duncan, 88 Tex. 611, 32 S. W. 878; Sincere v. Compress Co. [Tex. Civ. App.] 40 S. W. 326; Kirby Lumber Co. v. Dickerson, 42 Tex. Civ. App. 504, 94 S. W. 153; Lyon v. Bedgood, 54 Tex. Civ. App.

19, 117 S. W. 897; Wirtz v. Railway [63 Tex. Civ. App. 72] 132 S. W. 510; Railway v. Neef [Tex. Civ. App.] 138 S. W. 1168.

"The standard of care exercised by a master is not what other masters do under like circumstances, but, as in all cases, the standard must be the exercise of ordinary care. Proof that an instrumentality is the same used by other masters in the same business may be a circumstance to be considered by the jury in passing upon the question of negligence, but in the final analysis of the matter ordinary care must be the test applied. Labatt, Mast. & Serv., § 947, and authorities cited in footnotes."

The same rule is followed and announced in French v. Telephone Co. (Tex. Civ. App.) 162 S. W. 406; Construction Co. v. Lopez (Tex. Civ. App.) 172 S. W. 987; Batson-Milholme Co. v. Faulk (Tex. Civ. App.) 209 S. W. 837.

Whether or not the work was done by a method ordinarily in use and practice does not relieve the question of ordinary care or negligence. It is at least an issue of fact for the jury, and it is no defense against the negligent act that the thing done was done in the usual way.

[10, 11] There is abundant evidence to support the verdict on the issue of negligence. Both parties placed experts on the witness stand. There was testimony in the record to the effect that the method used in doing this work was dangerous and improper; that cast iron is a brittle metal, and cutting it with hammer and chisel would cause chips to fly off with great force, endangering those round about—the degree of force depending in some measure on the force of the blow that struck the chisel. Of course the testimony was conflicting and diametrically opposed, but the jury has found in favor of appellee's witnesses, and we cannot set the findings aside. We have devoted and given unusual consideration to the questions of law, discussed and written more at length than is our usual habit, on any one question, but this has been brought about by the able oral argument and written brief presented by the able counsel of appellant, the effect of which was to make what appeared a simple question become one of grave doubt. In our examination of the questions we have also had the splendid brief of appellee's able counsel to aid us. These questions of law, down to proposition 9, practically settle the law of the case, and the other questions raised are largely ones of procedure.

[12] We overrule the ninth proposition, complaining of the action of the court in permitting appellee to prove by his witness Wilke that there are different methods of cutting metals—some cut them with chisels, and some with hacksaws, and some with acetylene torches. Appellant contends and undertook to show by its testimony that cutting metal with a hammer and chisel was commonly used, and it was therefore compe-

tent for appellee to show that other methods were employed in this line of work. As to whether a person of ordinary care would cut the grating with hammer and chisel, under the circumstances, would to some extent be governed by the methods available for performing the work.

We also overrule appellant's 10th, 11th, and 12th propositions, somewhat to the same effect, for the reasons given.

[13] Appellant's thirteenth and fourteenth propositions complain of the admission of testimony concerning the use of goggles to protect the eyes when metal is cut with a chisel, upon the ground that it is irrelevant and immaterial. This testimony was elicited upon cross-examination in rebuttal as tending to explain, and in reply to appellant's contention and evidence that cutting this metal with a hammer and chisel was a safe and proper method in regard to the method employed in the present case where goggles were not used. Goggles were shown to be used as a method of safety to protect the eyes from flying pieces of metal. We overrule these propositions.

By the seventeenth proposition appellant presents the contention that the verdict of the jury in answer to question 5, that the plaintiff did not assume the risk, is contrary to the law, and against the great weight and overwhelming preponderance of the evidence.

[14] Appellant sought to bring this case within the rule of law fixed by federal statutes relating to assumed risks. A thorough examination of the testimony convinces us that there was no testimony sufficient to show, at the time of the accident, that the work engaged in and being done was interstate commerce. Appellee was doing no more than assisting in preparing a grating that later was to be used upon a draining ditch, and was no more engaged in interstate commerce than they would have been had the grate been cut in the usual way at the machine shop; nor was it even shown that the drainage ditch was essential to the use of the track in hauling interstate commerce. The foreman, Mr. Elledge, testified:

"We were not doing any work on the railroad. We were not doing any work on the track; our work was over the track, across the track, but not track work. We were not doing any work on the road bed either. We were placing the grates along there; we were not doing any track work."

The testimony, not necessary to set out, is wholly lacking to bring it within the definition of "interstate commerce." We find no merit in the contention, and overrule the same.

[15] Appellant's nineteenth proposition presents the contention that the trial court erred in refusing to permit appellant to question the jurors as to whether or not they thought a man working for a railroad company, who got hurt working on his job, ought

to get some money for it, even though nobody was at fault. Appellant filed its bill of exceptions to this refusal of the trial court, and the following indorsement was made thereon by the judge:

"The above and foregoing bill of exceptions was seasonably and timely presented to me by the defendant, and same is now here allowed and approved this 19th day of June, 1925, with the following qualifications: * * * The voir dire examination of the jury lasted for nearly two hours, and counsel for both parties were allowed much latitude in conducting this examination. Each member of the panel was asked if he had any bias or prejudice either against the plaintiff or against the defendant, railway company, and was also asked whether he would try the case against the railway company with the same fairness and impartiality that he would try a case against an individual, and further whether he would give the railroad company the same fair consideration that he would give the plaintiff. During the course of this examination, five members of the panel were excused by the court for cause, and the remaining members of the panel each stated that they had no prejudice against the railroad company, and would give the defendant the same fair and impartial consideration which they would give to the plaintiff or any individual; and each one of them stated upon oath that he would be governed by the law as given in the court's charge, and would try the case according to the law and the evidence. With the foregoing qualification, the above bill of exception is allowed and approved, and ordered filed as a part of the record herein."

[16] We can add nothing more to the trial court's view except to approve it. Trial courts' conduct in the preliminary selection of jurors on their voir dire is a sacred trust, committed alone to the trial court to select competent jurors, unprejudiced, fair-minded, and qualified to try the cause before him, and his action will not be lightly set aside, unless very arbitrary action and abuse of authority is shown.

[17] Appellant's twentieth proposition challenges the action of the court in overruling the motion for new trial, on the ground of the misconduct of the jury in not diminishing the damages in proportion to the amount of negligence attributed to appellee. The following issues were submitted to the jury, which, with the answers, are as follows:

"(4) Was plaintiff negligent in placing himself in such position that pieces of metal that might fly off as the grating was being cut might strike him in the eye? Answer: Yes.

"(4a) If you answer 'Yes' to question 4, then did such negligence proximately contribute to the accident and the injury sustained by the plaintiff? Answer: Yes.

"(4½) Was plaintiff negligent in taking hold of and holding the grating while the carpenter, Juan Castro, was cutting it with hammer and cold chisel? Answer: Yes.

"(4½a) If you answer 'Yes' to question 4½, then did such negligence proximately contribute to the accident and the injury sustained by the plaintiff? Answer: Yes."

We do not think, under the motion, the court should have allowed the jury to be brought before it, under the facts shown, to consider written ex parte statements or to have heard oral testimony for the purpose of impeaching their verdict, unless it was a case purely of "misconduct of the jury." No misconduct was shown on the part of the jury in fact, by a failure to diminish the verdict, but, on the contrary, it is sufficiently shown that the verdict was diminished.

[18] The right of trial by a jury is a sacred right, guaranteed by the Constitution and the law, and at common law it was not permitted for a jury to impeach its sacred verdict, but, as our statute (Rev. St. art. 2021) permits it in cases of misconduct, the right must be strictly limited to questions of real misconduct. Garza v. Commission Co. (Tex. Civ. App.) 147 S. W. 687; Railway v. Bosher (Tex. Civ. App.) 165 S. W. 93; Farrand v. Railway Co. (Tex. Civ. App.) 205 S. W. 845; Hermann v. Schroeder (Tex. Civ. App.) 175 S. W. 788; Twitchell v. Klinke (Tex. Civ. App.) 272 S. W. 283; Wood v. Railway, 15 Tex. Civ. App. 322, 40 S. W. 24; Maffi v. Stephens, 49 Tex. Civ. App. 354, 108 S. W. 1008; Kilgore v. Jordan, 17 Tex. 341.

The trial courts have great powers, and are largely responsible for the enforcement of, as well as the administration of, the law. It is a duty they should never overlook or ever pass lightly by, nor pass up to appellate courts. We can only review their rulings.

[19] We do not think there was any error, as claimed in appellant's twenty-third proposition, for the appellee to state what he received while in the army, as being irrelevant or immaterial and too remote in time; it being a period of less than 5 years before the date of the injury. It went to the value and weight of the testimony and bearing upon his capacity to earn money prior to the accident. Electric Railway Co. v. Murphy, 49 Tex. Civ. App. 586, 109 S. W. 489; Railway Co. v. Harling (Tex. Com. App.) 260 S. W. 1016.

[20] Appellant complains of the action of the court in the conduct of the trial in permitting counsel for appellee to ask questions, and, when objected to, withdraw them, without permitting an answer. We really do not see how that could prejudice appellant's cause. The jury were reasonable men, and could see for themselves whether counsel was doing that to unduly influence them or were really in earnest in so conducting their cause. The court could see too, and an alert trial judge could and should control such actions if improper. There are some things sometimes indulged in in the trial of causes injurious to the opposite side, not available for an objection because passing forth quickly like an instantaneous picture, a panora-

ma, for only the court could and should stop and admonish counsel that such practice when so indulged in is in contempt of court.

A careful reading of the bill of exceptions and statement of facts fail to convince us that any harm was done to the prejudice of appellant's case.

[21] In regard to appellant's twenty-fifth proposition, in which it is complained that appellee's counsel improperly stated in his argument to the jury, "Nearly every prospect that the plaintiff has is in your hands," this language seems to have been used in the opening sentence of counsel for appellee in his speech to the jury. It was objected to and withdrawn by appellant, whereupon the court instructed the jury not to consider it. We do not think that language was inflammatory in itself, or tended to unduly influence the jury. Appellee was a poor man, had no means of support except by the "sweat of his brow," his eye being lost by the alleged negligent act of appellant, and it was within counsel's right to make his appeal as touchingly as he could to bring a responsive result from the jury of adequate damages. Railway Co. v. Aleman, 52 Tex. Civ. App. 565, 115 S. W. 73; Duerler Mfg. Co. v. Eichhorn, 44 Tex. Civ. App. 638, 99 S. W. 715; Gray v. Allen (Tex. Civ. App.) 269 S. W. 510.

[22] On the question of the excessiveness of the verdict, we have seen no evidence that shows any misconduct on the part of the jury in arriving at this verdict. It was shown, in addition to the loss of his right eye, appellee also lost about 50 per cent. of the vision of his left eye, on account of the injury. While in the hospital, the eye that was not struck out "was almost closed, and he could hardly open it at all, and he had no vision, scarcely any vision, in fact. That lasted for several months." He testified:

"Since my eye has been taken out, I suffered a long time, and still suffer right now, sir. If I got out in the middle of the day, when the sun is shining, I have to quit work right now; I work until about 10 or 11 o'clock, and, if the sun comes out, I ride with another man. I am trying to sell automobiles now for the Smith Motor Company. My left eye, the one that was not taken out, has bothered me since this injury. I have constant headaches, and it blurs. If I get out here and try to work with it, it keeps blurring all the time. I am not able to read well; I can pick up a paper and start reading the headlines, but if I start to read an article all the way down I have to quit; the print runs right into one another."

Prior to his injury, plaintiff had perfect eyesight, and held the highest marksmanship records in the army, both with the rifle and pistol. At the time of his injury, appellee was a young man, 31 years of age, and, as shown by the record, the work he was engaged in at the time of the accident was purely temporary. He had applied for a position as fireman, and was temporarily engaged as carpenter helper until the job as fireman would be available. It is apparent therefore that his earnings as carpenter helper did not fairly represent the man's earning capacity. The evidence shows that while he was in the army as a first lieutenant he was earning over $200 per month; that shortly prior to the accident he was engaged in the restaurant business, where his earnings averaged more than $175 per month. The evidence therefore indicates that his earning capacity has been materially reduced, and, in addition to this, he has suffered an injury and a deformity of vision which must go with him through life.

We have given very careful thought and consideration to all the assignments presented and propositions thereupon, and, finding no reversible error assigned, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

We have very carefully gone over the record, and reviewed our opinion, and especially have we read and reread the able and carefully prepared motion for rehearing of appellant. It convinces us that we should make ourselves a bit clearer in stating in our opinion the reasons for saying the case presented no issue of interstate commerce. This is necessary because of our brevity in statement on that issue, and the strong argument now presented by appellant on that contention, that appellee was employed in interstate commerce, and therefore assumed the risk. It would be a very narrow and extreme construction of that law to so hold in this case that he was engaged in the work of interstate commerce.

[23, 24] Independent of whether such work was interstate commerce or not, the jury found that appellee did not assume the risk, and it was a question of fact for the jury. He could not have assumed the risk of appellant's negligence in striking the chisel with a negligent degree of force. The grating was first struck with easy blows, but at last the blow that was struck with such force as that it drove the metal and caused it to break off and fly into appellee's eye "was far more severe than the other blows." Appellee could not know that a severe blow, more severe than was necessary, would be struck, and that he would be endangered by this act of negligence.

Now, unless such act was known to him, or of necessity would have come to him in the course of his employment, he did not assume the risk of appellant's act in striking with a negligent degree of force, and could not know beforehand of this act of negligence before it had taken place. It is admitted that appellee had never done this kind of work before, and never was ordered to do it, and manifestly he could not be acquainted with the danger incident to the method of work em-

ployed at the time of his injury and could not assume the risk of appellant's acts. Now it is manifest that appellee was not aware of the danger incident to appellant's acts of negligence, and was not guilty of the assumption of the risk. The jury found that appellee did not assume the risk. So, regardless of the question of interstate commerce under the facts in this case, appellee, as found by the jury, did not assume the risk of appellant's negligence.

We do not think it necessary to discuss any other phase of the case, because nothing new is presented, and everything in this motion has now and heretofore been considered and passed on.

The motion for rehearing is overruled.